## STATE v. SHEPPARD JOHNSON.

A general verdict of " Guilty " upon an indictment containing two counts, one for stealing a horse, and the other for receiving a horse, knowing the same to have been stolen, is error, and entitles the prisoner to a *venire de novo.*

(*State* v. *Weaver*, 13 Ired., 203; and *Brady* v. *Beason*, 6 Ired., 425, cited and approved. *State* v. *Williams*, 11 Ired., 140; *State* v. *Bailey*, 73 N. C. Rep., 70; and *State* v. *Wise*, 66 N. R. Rep., 120, cited, distinguished from this, and approved.)

INDICTMENT, for *Larceny* and receiving stolen goods, tried before CLOUD, J., at Spring Term, 1876, of FORSYTH Superior Court.

At the preceding term, the defendant was put upon trial upon the same bill of indictment, and the jury failing to agree upon a verdict, his Honor ordered a juror to be withdrawn and a mistrial entered, and remanded the prisoner.

When the case was called for trial at Spring Term, 1876, the counsel for the prisoner insisted that he could not again be put upon trial for this offence, and moved the Court to discharge the prisoner. The motion was overruled and the defendant pleaded " not guilty " generally.

The jury rendered a verdict of " guilty," and thereupon the prisoner moved the Court to arrest the judgment upon the ground that the bill of indictment contained two counts charging different offences with different punishments, to-wit : the first count charging the larceny of a horse, and the second charging the prisoner with receiving a horse, knowing him to have been stolen, and that the jury had returned a verdict of guilty generally.

The motion was overruled by the Court and judgment of imprisonment in the State penitentiary pronounced.

The prisoner appealed.

*Attorney General Hargrove* and *Bailey,* for the State.
*Starbuck* and *Tourgee,* for the prisoner.

PEARSON, C. J. Since the establishment of the penitentiary offences against the public are divided into three classes: 1. Offences that are punished by hanging. 2. Offences that are punished by confinement in the penitentiary. 3. Offences that are punished by fine or imprisonment in the County jail, or both.

If on a trial for an offence of the first class the Judge directs a mistrial, he is required to find the facts and his action is the subject of review in this Court, a practice based on the sacred principle of the common law—no man shall be twice put in jeopardy of life or limb. The word "limb" having reference to the barbarous punishment, which has now become obsolete, of striking off the hand. Coke Litt., 227; 3 Inst., 110.

On a trial for an offence of the other two classes, the discretion of the presiding Judge is not the subject of review, and, as in trials of civil actions, he assumes the responsibility of making a mistrial whenever he believes it proper to do so in furtherance of justice. *State* v. *Weaver*, 13 Ired., 203; *Brady* v. *Beason*, 6 Ired., 425.

In *State* v. *Williams*, 11 Ired., 140, it is said: "The jury should be satisfied that the prisoner was guilty in one of the modes well charged; and if so, it was manifestly of no consequence whether the conviction was on any one or all of these counts, since the offences were of the *same grade and the punishment the same.* The instruction might relieve the jury of some trouble in their investigation, but could work no prejudice to the prisoner."

It is clear our case does not come within that principle, for the offences charged in the two counts are not of the same grade, and the punishment is not the same: so upon a *general verdict* "the record" does not enable the Court to know upon which count, in other words, for which offence, the prisoner should be sentenced, and no judgment can be given

without inconsistency and error apparent upon the face of the record.

By the act of 1868 " stealing a horse " is made both as to the principle and the accessor *before* the fact, subject to much severer punishment than ordinary larcenies, (see Bat. Rev., chap. 32, sec. 17,) while the offence of receiving a horse knowing it to have been stolen is left as before. The Judge in passing sentence would feel it to be his duty, in order to observe the grade of punishment, to be more severe in punishing " horse stealing " than in receiving a stolen horse; but the record does not inform him of which one of these two distinct offences the prisoner is convicted. During the war *actual* horse stealing grew into alarming proportions. This crime was " a survival of the war " and the act of 1868 was passed to remedy the evil by increasing the punishment. The evil was so great in the western part of the State that a bill was offered in the General Assembly to make " horse stealing " a *capital* crime. It may admit of question whether, construing the act in reference to the evil intended to be remedied, it can be made to embrace *constructive* horse stealing, that is, obtaining a horse with the consent of the owner by means of a forged order, or other fraudulent contrivance, as distinguished from *actual* horse stealing, that is, taking and carrying away a horse without the consent of the owner. However this may be, the offence certainly comes within the words and the meaning of the act, (Bat. Rev., chap. 32, sec. 66,) making it a misdemeanor to obtain possession of property by means of any forged or counterfeit paper, &c., with intent to defraud the owner, &c. This embraces a horse as well as any other chattel. There is an apparent incongruity in making the same act amount to " horse stealing " under the highly penal act of 1868, or to a misdemeanor, at the discretion of the Solicitor who draws the bill. This may account for the reluctance of two juries to convict for the crime of " horse stealing."

This suggestion is made for the consideration of the Solicitor, in case he shall consider it to be his duty to prosecute the matter any further after the arrest of judgment.

In *State* v. *Bailey*, 73 N. C. Rep., 70, where there was a general verdict upon two counts, it is assumed in the opinion that one of the counts was bad, and the question is not discussed.

In *State* v. *Wise*, 66 N. C. Rep., 120, it did not appear by the record proper, to-wit: the bill of indictment, plea, issue and verdict, whether the prisoner was convicted under the Act of 1869, which punishes the crime of arson by imprisonment in the penitentiary, or under the Act of 1871, which punishes the crime by hanging.

For this error the judgment is reversed, and the Court takes no notice of the fact set out in " the statement of the case," that the crime was committed in *August*, 1871, after the Act of 1771 had gone into effect, on the ground that "the Court must be informed judicially, by the record, under which of these two statutes the prisoner is convicted, before it can proceed to judgment?" Error, apparent on the face of the record, cannot be cured by a statement of the Judge. So, in our case the error, apparent on the face of the record, is not cured, because his Honor sets out the fact that " on the trial no evidence was offered bearing upon the second count." Upon motion in arrest of judgment, as upon demurrers and writs of error, the Court is confined to what is apparent on the face of the record. This is familiar learning, which applies both to the civil and criminal side of the docket. A statement of the case from the Judge's notes is only relevant to motions for a *venire de novo* and the like.

There is error. Judgment reversed. This opinion will be certified, to the end that proceedings may be had agreeable to law.

PER CURIAM.                              Judgment reversed.