(No. 2866, July 25, 1924. Rehearing Denied Aug. 20, 1924.)

## STATE v. SMELCER et al.

### SYLLABUS BY THE COURT

1. Instructions examined, and held to correctly state the law.

2. A killing by a person while he is engaged in the commission of a felony is murder in the first degree, both on his part and on the part of his companion, who is present, aiding and abetting the commission of the felony, whether the killing is intentional or only accidental, under the provisions of section 1459, Code 1915, which provides that all murder "which is committed in the perpetration of or attempt to perpetrate any felony, * * * shall be deemed murder in the first degree."

Appeal from District Court, Otero County; Ed. Mechem, Judge.

Charles H. Smelcer and another were convicted of murder in the first degree, and they appeal. Affirmed.

E. P. Davis, of Santa Fe, for appellants.

M. J. Helmick, Atty. Gen., and J. W. Armstrong, Asst. Atty. Gen., for the State.

### OPINION OF THE COURT

PARKER, C. J. The appellants were traveling through Lincoln county, and stole two saddles and blankets and bridles, and were apprehended by Deputy Sheriff A. S. McCamant, and taken before a justice of

the peace at Corona, where they were bound over to await the action of the grand jury for said larceny. In default of bail, they were committed to the county jail by the justice of the peace. They gave fictitious names to the justice of the peace. The said deputy sheriff, with a warrant of commitment, and in company with one Graciano Yriat, a Frenchman, started with the appellants in an automobile to the county jail at Carrizozo. When within about 15 miles of Carrizozo, appellants overpowered the deputy sheriff and the Frenchman, robbed them of a six-shooter and a Winchester, and amunition for the same, and robbed them of some money and clothing. They thereupon took the automobile and drove toward Alamogordo, stopping on the way at Carrizozo, and purchasing cartridges for the Winchester.

The deputy sheriff and the Frenchman, after about four hours, reached Carrizozo, communicated the facts to the sheriff's office at that place, from which office the information was telephoned to the sheriff at Alamogordo. Appellants drove into Alamogordo in the stolen car and were accosted by W. L. Rutherford, sheriff of the county, who attempted to arrest them. They refused to stop the automobile, and the sheriff jumped on the running board of the machine, whereupon one of the appellants pointed the loaded Winchester at him and ordered him to get off the running board. The Winchester was cocked, and the sheriff grabbed the barrel of the gun, and the appellant testifies that the sheriff pulled the Winchester through his hands, and that it was accidentally discharged, killing the sheriff. The other of the appellants was sitting on the front seat of the car, at the wheel, armed with the six-shooter, with which he threatened the sheriff. The sheriff fell off of the running board of the car when he was shot, and the appellants drove rapidly out of Alamogordo toward El Paso. Near Oro Grande, on the road to El Paso, the appellants were so closely pursued by a posse that they were compelled to abandon the car and took to the hills on foot. The posse overtook them, and they

there resisted arrest and shot into the posse with both the Winchester and the six-shooter, wounding one of the party. They were finally arrested and conveyed to the jail in Alamogordo. Shortly thereafter they were indicted and put upon trial, and convicted of murder in the first degree, and sentenced to be hanged, from which judgment this appeal has been perfected.

This is a very unusual case. Both of the appellants were under 21 years of age, and theretofore had had no criminal record. The parents of at least one of them are shown to have been Salvation Army people. Numerous persons in Amarillo, Tex., where the appellants had previously resided, testified to their previous good character. How two young men could so suddenly turn from a correct life to such criminal actions as are shown by this record is hard to understand. Criminal tendencies and attitudes are more usually the result of gradual growth, and very seldom is a disposition or willingness to commit the highest crimes known to the law so suddenly and radically manifested.

Appellants were shown throughout the trial by the court and district attorney the utmost consideration, and their rights were most carefully guarded. After their conviction, they being without funds, the court prepared and certified the record in the case at public expense. In this court we appointed counsel for the appellants, and he has briefed and argued the case as best he could. Appellants both wrote letters to their parents in Amarillo, giving an account of their doings, which established their guilt beyond any reasonable doubt.

[1] 1. Counsel for appellants argues that the instructions of the court are faulty as to the appellant Smelcer, in not requiring the state to prove beyond a reasonable doubt a conspiracy by the appellants to murder the sheriff, before Smelcer, who did not shoot, could be convicted. The argument is based upon instruction No. 2, in which the court undertook to define the material allegations of the indictment, which must

be established to the satisfaction of the jury beyond
reasonable doubt. In the instruction, the court said:

"The material allegations of the indictment, necessary to
be proved to your satisfaction beyond a reasonable doubt, are
as follows: (1) That the said W. L. Rutherford was killed.
(2) That he was killed by the defendants, Charles H. Smelcer
and William G. Le Favers, or either of them. (3) * * *"

It is apparent that this was a general instruction,
and was not intended by the court as a specific appli-
cation of the law to each of the appellants, but was
intended merely as a general statement of the scope
of the charge contained in the indictment. As to the
appellant who actually killed the sheriff no complaint
can be made of the instruction, and as to the appellant
who did not do the actual killing no complaint can be
made, as the instruction does not include him within its
terms. The court followed this instruction with appli-
cation of the charge to the specific facts shown in the
evidence, and instructed the jury to find the appellant
who did the actual killing guilty as charged, if they
were satisfied beyond a reasonable doubt of the facts
recited in the instruction. This was followed by in-
structions fully explaining the law, in regard to aiding
and abetting the commission of crime, and authorizing
the conviction of the appellant who did not do the
shooting, the same as the other appellant, in case the
facts recited in the instruction were true. It thus ap-
pears that the whole ground was thoroughly and cor-
rectly covered by the court, and the argument of coun-
sel is untenable.

[2] 2. Counsel for appellants presents the propo-
sition that the facts required the submission to the jury
of the question of the guilt of the appellants of in-
voluntary manslaughter. As before stated, one of ap-
pellants was sitting on the back seat of the car, and
when the sheriff got on the running board he drew
the Winchester on the sheriff and ordered him off the
car. The appellant testified that the sheriff grabbed
the gun barrel and pulled it through the appellant's
hands, and that the same was accidentally discharged,

without design on his part to shoot the sheriff. It may be said generally that the sheriff was well within his right and duty to attempt to arrest appellants. It was their duty to submit to the arrest without resistance on their part. They had committed two or more felonies, and were still carrying the same out, and were attempting to escape arrest. The drawing of the Winchester on the sheriff was an assault with a deadly weapon, as was the drawing of the six-shooter by the other appellant, and both were felonies. The resistance of the sheriff was itself a felony. Section 1666, Code 1915. It thus appears that, the appellants being engaged in the commission of a felony, there was no occasion to submit involuntary manslaughter to the jury. That a killing under these circumstances is murder in the first degree, see section 1459, Code 1915; 29 C. J. "Homicide," § 70; 13 R. C. L. "Homicide," §§ 147, 148; Moynihan v. State, 70 Ind. 126, 36 Am. Rep. 178; Buel v. People, 78 N. Y. 492, 34 Am. Rep. 555; People v. Milton, 145 Cal. 169, 78 Pac. 549; Cox v. People, 19 Hun (N. Y.) 430; State v. Hopkirk, 84 Mo. 278; People v. Olsen, 80 Cal. 122, 22 Pac. 125; State v. Sexton, 147 Mo. 89, 48 S. W. 452; State v. King, 24 Utah, 482, 68 Pac. 418, 91 Am. St. Rep. 808; Allen v. State, 16 Okl. Cr. 136, 180 Pac. 564; Morgan v. State, 51 Neb. 672, 71 N. W. 788; Com. v. Chance, 174 Mass. 245, 54 N. E. 551, 75 Am. St. Rep. 306; Johnson v. State, 66 Ohio St. 59, 63 N. E. 607, 61 L. R. A. 277, 90 Am St. Rep. 564, and note; People v. Sullivan, 173 N. Y. 122, 65 N. E. 989, 63 L. R. A. 353, and note, 93 Am. St. Rep. 582.

The foregoing covers the scope of the argument of counsel in behalf of appellants. We have carefully examined the record, and feel compelled to affirm judgment, and the day of execution of the appellants is fixed at Friday, the 22d day of August, 1924; and it is so ordered.

BRATTON and BOTTS, JJ., concur.