13262

STATE v. WILSON

(161 S. E., 104)

414

October 30, 1931.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BLEASE.

The transcript of the record contains the following agreed statements:

"Upon an indictment charging him with assault with intent to ravish one Helen Forrest the defendant, W. K. Wilson, was put on trial before Hon. M. A. McRae, Special Judge, with a jury in the Court of General Sessions for Charleston County during the October, 1930, term thereof.

"The jury returned a verdict of guilty with recommendation to mercy, whereupon the defendant was sentenced to fifteen years' imprisonment.

"The testimony showed that Helen Forrest was at the time of trial ten years of age, she testifying that she would be eleven on the 8th day of October, 1930. The offense was alleged to have been committed during the month of July, 1930, so that she was over ten years of age at the time of the commission of the alleged offense, but under eleven years of age."

The victim of the alleged assault was a colored girl; and the appellant, of the same race, was a minister of the gospel.

The verdict returned was as follows: "We, the jury, find the defendant guilty with recommendation to mercy of the Court."

The indictment contained two counts. To understand the questions involved in the appeal, we quote from the instrument such portions as are deemed pertinent.

From the first count: "That W. K. Wilson, * * * in and upon one Helen Forrest, 10 years of age, in the peace of God and of the said State, then and there being, did make an assault, and her, the said Helen Forrest then and there did beat, bruise, wound and ill-treat with intent her the said

Helen Forrest violently and against her, then and there feloniously to ravish and carnally know, and other wrongs to the said Helen Forrest then and there did to the great damage of the said Helen Forrest. * * *"

From the second count: "That the said W. K. Wilson * * * in and upon one Helen Forrest in the peace of God and of the said State, then and there being, did make an assault, and the said W. K. Wilson then and there did beat, bruise, wound and ill-treat, and other wrongs to the said Helen Forrest then and there did, to the great damage of the said Helen Forrest. * * *"

Three of the exceptions complain of error in the charge to the jury. We shall consider first the second exception, and in connection therewith some of the alleged errors set forth in the first exception. The second exception is based on the ground that the presiding Judge "erred in charging under the indictment in this case that the provisions of section 9 of the Criminal Code, providing that a woman under the age of fourteen years could not consent to sexual intercourse, were applicable." In the first exception the same error is also set up.

That exception, as well as the like error complained of in the first exception, is taken under a misapprehension of what the Judge did charge the jury. Section 9 of the Criminal Code 1922, makes it a felony for any person to "unlawfully and carnally know and abuse any woman child under the age of sixteen years. * * *" We do not find in the charge any reference whatever to the provisions of the section. In the argument of the counsel for the state, they have said, "A thorough study of the charge fails to disclose wherein the presiding Judge anywhere referred to section 9." We find nothing in the appellant's brief pointing us to any language of the court referring, either directly or indirectly, to section 9. We shall speak again of section 9, but it is only necessary to say, as to the stated position of the appellant, for the reason indicated, it cannot be sustained.

While it is lengthy, we deem it best to quote in full the language of the charge complained of in the first exception. It was as follows:

"Under the old Common Low the age at which a female human being could legally consent to sexual intercourse was ten years; in South Carolina since December the 31st, 1895, the age at which a female human being can legally competently consent to such intercourse is fourteen years. I will now read you from the State Constitution of 1895, Article 3, Section 33: Marriage of Whites and Negroes. Sexual Intercourse. "The marriage of a white person with a negro or mulatto or person who shall have one-eighth or more negro blood shall be unlawful and void. No unmarried woman shall legally consent to sexual intercourse who shall not have attained the age of fourteen years."

"So that, gentlemen, if you should find from the evidence in this case that the girl, Helen Forrest, or that the defendant, W. K. Wilson, sought to and intended to have sexual intercourse with Helen Forrest, but fell short of the completed act, if you should find that he made an assault upon her for the purpose of having such intercourse and if you should further find that the prosecuting witness, Helen Forrest, at the time of the alleged assault, was under the age of fourteen years, then I charge you, gentlemen of the jury, that the consent or willingness or indifference or ignorance on her part, if any, as to what was taking place does not excuse, cannot excuse, since the Constitution of our State directly states that a female under the age of 14 is legally incompetent, incapable of consenting to sexual intercourse. Now whether or not she consented goes out of the case if you find that she is under the age of 14 years."

The only objection to the given instructions remaining to be considered is the one that it was error "to charge the jury that the constitutional limitation as to the age of consent, contained in article 3, § 33, of the Constitution of 1895, was applicable under the indictment in this case."

A reading of appellant's brief discloses that some of the positions taken are contradictory. We quote the first paragraph of the argument: "The first count in the indictment undoubtedly charges a crime under section 9 to the Criminal Code of 1922, because the age of the prosecutrix is stated in the indictment."

A little later this is said: "The indictment contains two counts, the first charging rape or assault with intent to ravish, and the second assault and battery of a·high and aggravated nature."

A close examination of the argument, however, shows that the appellant mostly depends upon the position last stated; and that harmonizes with the agreed statement of facts, namely, that the indictment *did not charge a violation of Section 9 of the Criminal Code.*

It is our opinion that the language quoted from the first count of the indictment was intended to charge, and that it clearly and appropriately did charge, the appellant with the crime of *assault with intent to ravish, as known to the common law, modified in this State.* While the indictment alleged the age of the victim at the time of the alleged assault to have been only 10 years, that fact was not of itself sufficient to indicate that the appellant was charged with the violation of the provisions of section 9 of the Criminal Code, and that he was not indicted for assault with intent to ravish. Although it is not necessary in charging either rape or an assault with intent to ravish, under the common law, or under that law as modified by our law, or under the provisions of Section 7 of the Criminal Code, to set forth the age of the alleged victim, the insertion of an allegation as to age is not harmful. *State v. Haddon,* 49 S. C., 308; 27 S. E., 194, 195. Certainly, one charged with rape or assault with intent to ravish, should not complain that the age of the female is set forth in the indictment, for then he is put on notice as to what the State will likely endeavor to show by evidence on the question of the age of

the victim, as affecting "the issue of force to overcome resistance, or compel consent through fear, * * * since a child of tender years would more readily yield through fear than a woman of maturer years." *State v. Haddon, supra.*

Section 7 of the Criminal Code, 1922, as originally enacted, made rape a crime, or, more correctly stated, *recognized it as a crime under the common law* and fixed the punishment for the crime; but the punishment there provided was changed considerably by the Act of 1909 (26 Stats. 206), now appearing in the Criminal Code as section 8. The last-mentioned section provides the punishment of death for any person convicted of either rape or an assault with intent to ravish, "unless the jury shall recommend to the mercy of the Court, in which event the defendant shall be confined at hard labor in the State Penitentiary for a term not exceeding forty years or less than five years, at the discretion of the presiding Judge."

While the punishment for assault with intent to ravish is fixed by statute, we know of *no statute* expressly defining the crime. Our law relating to the offense like the law against rape, *comes from the common law, as it has been accepted in this State, with such modifications therein as may have been made.* It appears necessary, therefore first to inquire into the common law on the subjects of rape and assault with intent to ravish. To understand the last-mentioned crime, we must examine into the law of rape, just as it was proper for the presiding Judge, in the trial of the case at bar, in giving information to the jury as to the crime of assault with intent to ravish, to first explain to them the law of rape.

We quote at length from 33 Cyc.; the pages being indicated and the italics supplied:

"*Rape at common law is the unlawful carnal knowledge of a woman over the age of ten years forcibly and without her consent,* or, as it is otherwise expressed, by force, or forcibly, and against her will, or, *under an early English statute which is a part of our common law, such knowledge*

*of a female child under the age of ten years, either with or without her consent."* Pages 1415, 1416.

"Rape may be committed on a female under the age of puberty, *or on one so young as to be incapable of giving her consent."* Page 1420.

"It was held in some of the early cases that under the common law it was not rape to have sexual intercouse with a female child, however young, if she consented; but Sir Matthew Hale was of the opinion *that sexual intercourse with a girl under twelve years of age was rape, that being the age of female discretion at common law.* When the punishment for rape was mitigated by statute in England females under twelve years of age were considered incapable of consent; *but the punishment was again increased by the statute of Elizabeth and made to apply to all sexual intercourse with girls under ten years of age, whether with or without their consent; and this statute has been regarded as a part of our common law.* Most states, however, have enacted statutes on the subject, some of them fixing the age of consent at ten years, some at twelve, and others at fourteen, fifteen, sixteen, and even as high as eighteen years. Some of the statutes apply to females between certain ages, as, for example, between twelve, fourteen, fifteen, or sixteen and eighteen, only where the female was of previous chaste character or repute. *Intercourse with a female under the age of consent at common law, or as thus fixed by the statute of the State in which the offense occurs, is rape, whether she consents or not, as she is in law incapable of consent.* It makes no difference whether the female has passed the age of puberty or not; *if she is under the age limit fixed by statute, consent is immaterial and all sexual intercourse is rape."* Page 1424.

*"It may be shown that the female was under the age of consent, so as to make the offense rape nothwithstanding her consent, and this, as a rule, although her age is not alleged in the indictment.* And the age of the prosecutrix may

be shown on the question of consent, even where she was over the age of consent. *Defendant of course may show that the female is above the age of consent,* but he cannot give her declaration to another, nor state how old he took her to be." Pages 1472, 1473.

In the same authority, we find the following statements as to the crime of assault with intent to rape:

"It is sometimes said that assault with intent to commit rape cannot be made without the use of violence, *but an attempt to commit rape includes attempts* by fraud, or threats, or *with a female under* age. * * *" Page 1430.

"The specific intent to commit rape is an essential element both of attempt to rape and of assault with intent to rape. Therefore, to convict of either of these offenses, *it must be shown that the accused intended to have intercourse with the female by force or against her will,* that, in case of assault, he not only used force, but used it with the intention of having intercourse notwithstanding any resistance on the part of the female, *unless she was* unconscious, insane, or *of such an age that she was incapable of consenting.*" Pages 1432, 1433.

Some courts, among them Nevada, which decided the case of *State v. Pickett,* 11 Nev., 255, 21 Am. Rep., 754, relied upon so strongly in the dissenting opinion, "making a distinction between attempts and assaults with intent to rape," have held "that an assault implies force and resistance, and therefore there can be no assault with intent to rape on a consenting female, even where she is under the age of consent, although there may be rape or attempted rape notwithstanding her consent." 33 Cyc. 1434. Cited as so holding, there appear at note 52, page 1435, of 33 Cyc., some twelve cases, ten from English courts and two from American courts, among them *State v. Pickett, supra.* But just preceding the last quotation from Cyc. we find this general rule: *"It has also been held in most jurisdictions that there may be an assault with intent to rape upon a con-*

*senting female where she is under the age of consent, on the ground that in law she cannot consent to such an assault."*

To support that holding and well-recognized legal principle, some forty-five cases, from twenty-one American states, are listed in note 51, page 1434, Id.

A study of the Pickett case fails to reveal that the Court took into consideration any constitutional or legislative enactment, if there was one in Nevada, fixing generally *the age of consent,* such as is contained in our Constitution.

While the common law of England is of force in this State, except where it has been abrogated or modified by legislative enactment, the courts of this State, in construing the common law, are not bound by the decisions of the courts of England, for "We have a right to take our own view of the Common Law." *Shecut v. McDowel,* 1 Tread. Const. (6 S. C. L.), 35.

It is clear from the many quotations from Cyc. that the majority and better view of the American courts is to the effect that *it was rape to have sexual intercourse with an unmarried female child under the age of consent, either with or without her consent, under the common law, as accepted in this country; and likewise, under the common law, as accepted, one who committed an overt act amounting to assault with intent to ravish such female under the age of consent, even with her consent, was guilty of the last-named crime.*

The common-law age of consent generally was accepted as being 10 years, although there were some expressions, like those coming from Sir Matthew Hale, that the age was 12 years. Regardless of what the age was under the common law, 10 or 12, and what it may have been in this State prior to the Constitutional Convention of 1895, if there was any enactment fixing such age, under the provisions of article 3, § 33, of the Constitution of that year, the age was fixed at 14 years. As a matter of information, in our examination of the legal principles applicable to the case at

bar, we have found no legislative enactment, prior to the provision of the Constitution of 1895, fixing, or attempting to fix, the age of consent. No such enactment was contained in the Constitution of 1868. What is now the law as contained in section 9 of the Criminal Code, originally enacted in 1712, and amended from time to time, as to the unlawful carnal knowledge and abuse of young females, did not at any time fix, or endeavor to fix, generally, the age of consent.

To decide the question here, it is unnecessary to go back into any decision of our Court of last resort prior to the adoption of the Constitution of 1895. *It is absolutely clear that, when that organic law was adopted, the age at which an unmarried woman might consent to sexual intercourse was fixed at 14 years, and the common law, as to the age of consent, and any law of force in South Carolina theretofore, in conflict therewith, was abrogated.* To the constitutional provision any and all statutes enacted prior thereto, must yield. And any and all statutes adopted since that time, or which have been continued in our Code of laws, in any way touching the subject, must be construed with the constitutional provision in view, and if there is conflict between those statutes and the constitutional provision, the former must give way. If any statute may be harmonized with the constitutional provision, it is the duty of the Court to construe the statute so as to give it proper effect.

Construing, then, together the provisions of the common law, as they have been abrogated by the constitutional provision, it is clear that *"the unlawful carnal knowledge * * * of a female child under the age of"* fourteen *"years, either with or without her consent,"* is *rape.* 33 Cyc. 1415, 1416, and article 3, § 33, Constitution of 1895.

*It is equally clear that an overt act amounting to assault with intent to have unlawful sexual intercourse with a female under the age of 14 years, even if she*

*consents, under our law, is an assault with intent to ravish.* 33 Cyc. 1434, 1435, and article 3, § 33, Constitution of 1895.

In making those important declarations on a matter of such vital importance to our people, we depend not only upon the general authorities to which we have called attention and our own construction of the constitutional provision to which we have referred, but our opinion is clearly supported by two cases decided in this State since the adoption of the Constitution in 1895.

We refer first to *State v. Haddon, supra,* decided in June, 1896. Many of the italics in quotations have been supplied by us. The defendant there was indicted for rape, found guilty, with recommendation to mercy, and sentenced to the penitentiary for life. *The alleged victim was shown to have been 13 years old,* but the indictment did not so allege. The Court specifically called attention to the fact that the defendant *was not* indicted "for carnally knowing and abusing a woman child under the age of 10 years, which was made a felony and punishable as rape under section 115, Cr. St. 1893 ([§ 9, Criminal Code 1922] section 2460, Gen. St. 1882), which was amended by an act approved March 9, 1896, so as to read 'fourteen' instead of 'ten' years, wherein *it would* be necessary to allege the age of the child. The alleged crime having been committed one day before the Act of 1896 (22 Stats. 223), raising the age to 14 years, went into effect, the Court held that the amendatory act was not applicable, and said that section 115 (now section 9) was not even applicable *"since the child said to have been raped was over 10 years old, and the indicement did not attempt to describe the crime therein prohibited."* The court, through Mr. Justice Jones, said: *"The indictment, then, must be referred to section 114* [Section 7, Cr. Code, 1922, as to rape] *of the Criminal Statutes, or treated as indictment under the common law, in either of which cases it is not necessary to allege or prove the age of the victim of lust, nor whether she is married or not."*

Following a discussion of the matter of proof of the age of the woman or child charged to have been ravished, this very clear declaration was made: *"Moreover, since under the common law, a child under 10 years is presumed incapable of consenting to sexual intercourse, it is competent, under a common law indictment for rape, to inquire after the age of the female, on the question of consent."*

The defendant in Haddon's case excepted to the ruling of the trial Judge *that the age of consent was 14 years,* on the ground that it should have been held "that the defendant was entitled to be tried under the law as it stood at the time the act was committed, the age of consent then being ten years." The Court, in its opinion, assumed that the basis of the alleged error was the following instruction given in the charge to the jury: " 'Now, in this case, *if you come to the conclusion that this girl is under the age of 14, * * * then she cannot give her consent,'* etc."

Passing upon the exception, after quoting section 33, article 3, of the Constitution, the opinion announced: "This provision of the constitution, which took effect from and after the 31st day of December, 1895, was a part of the fundamental law of the state on the 28th day of March, 1896, —the date of the alleged crime. While, under the common law, the age of consent was 10 years, this rule was not of force in this State after December 31, 1895, except in so far as not abrogated by the constitutional provision cited. *At the time of the alleged crime, no maid or unmarried woman under the age of 14 years could consent to sexual intercourse. Hence it would have been error to have. ruled, in accordance with appellant's view, that the age of consent at the time of the offense was 10 years."*

Further on in the opinion of the Court are other pronouncements to the same effect that a maid under the age of consent, as fixed by the Constitution, 14 years, could not consent to sexual intercourse, and *one proven to have had such intercourse with her was guilty of rape.* We quote

some of the language: *"Was it error prejudicial to the defendant for the Circuit Judge to charge the jury, 'If you come to the conclusion that this girl is under the age of 14, then she cannot give her consent?' We think not."*

Referring to the appellant Haddon's contention that there was no allegation or proof that the alleged victim was an unmarried woman under the age of 14 years, Mr. Justice Jones said: "This view ignores the constitutional provision cited, which changed the common law rule. This provision of the constitution, when it became operative, did not of itself *create* a criminal offense. By its own operation there did not spring into existence such crime as the carnal knowledge and abuse of an unmarried woman under the age of 14 years, which would require allegation in the indictment, and supporting proof, that the woman was unmarried and under 14 years old. *The constitutional provision operated only on the question of consent to sexual intercourse, creating a new rule of evidence in the proof of consent,—declaring certain persons incapable of consenting*. Therefore, under the common law, in an indictment for rape it was unnecessary to allege that the female was under 10 years old, but, notwithstanding that, proof was allowed, or competent to be made, as to the age of the child, *because to prove one incapable of consenting either in law, or by reason of physical condition, is tantamount to proving the absence of consent;* as, in this State, there may be an indictment for rape without alleging that the female is unmarried and under 14 years old, and under such indictment it may be proven by the State, in its testimony in chief, that the female is unmarried and under 14 years old, in order thereby to establish that the sexual intercourse was without consent, or such proof may be offered by the State in reply to defendant's defense that the female actually consented."

Finally, we call attention to this matter. The defendant, Haddon, requested the Circuit Judge to charge, in effect, that, if the prosecutrix consented to the alleged intercourse,

the defendant could not be convicted of rape, which request was refused. Waiving the appellant's failure to properly except, the Court stated, however, "the request was properly refused," and declared: "The request to charge assumed as a fact that [the prosecutrix] was capable of consenting, *and failed to take into account, on the question of consent, the constitutional provision hereinbefore discussed.*"

The other case is that of *State v. Boyd,* 123 S. C., 24; 115 S. E., 809, 810. The defendant therein was charged with the identical crime alleged to have been committed by the appellant here, *assault with intent to rape.* The Court, of course, considered carefully and seriously his appeal, for the jury had found him guilty, without any recommendation to mercy, and he had been sentenced to death by electrocution. The victim, the record discloses, was "a little girl of 8 or 9 years." We take the following, adding emphasis, from the opinion of Mr. Justice Cothran, delivered for a unanimous Court: The second exception (is) as follows:

" '*Because the presiding Judge erred in failing to charge the jury concerning the question of consent on the part of the alleged victim;* the testimony of Dr. Vaughn being practically conclusive that there was consent from which, if the jury believed that there was consent (even if there could be no consent as a matter of law), they could have recommended the defendant to mercy.'

"There is no evidence tending to show that the child, if she had had the legal right to do so, consented to the act of the defendant. *If she had consented, under the constitutional inability to do so, the fact could not have been proved for any purpose.* If the defendant had been entitled to such a charge, no request was preferred to that effect."

Perhaps the holding in the Boyd case went a little too far, a question not necessary to be determined here. Under recent decisions of this Court, it may be that the jury had the right to know if the victim of the assault had consented in determining whether or not the accused should have re-

ceived a recommendation to the mercy of the Court. See *State v. King,* 158 S. C., 251, 155 S. E., 409; *State v. Blakeley,* 158 S. C., 304, 155 S. E., 408. While those cases were appeals from convictions of murder, the language of the statute (section 2, Criminal Code 1922), as to the effect of a recommendation to mercy by the jury, when one is found guilty of murder, is very similar to that contained in section 8 of the Criminal Code fixing the punishment for rape and for assault with intent to ravish.

Regardless of that question, however, there can be no doubt that this Court in a very few words and very plainly, as recently as 1922 (in the Boyd case, *supra*) in a case where a defendant was indicted for *assault with intent to ravish—*not for violation of section 9 as to carnal knowledge of a female child under the age fixed in the statute—on account of the age of the female, she being under 14 years, *expressly held that under the Constitution of this State, she did not have the ability to consent to the overt act necessary in the attempt to have sexual intercourse.*

But it is said: "If the construction (of the constitutional provision) attributed to the presiding Judge be correct the lack of consent declared in the Constitution supplies every element of common law rape, which would render section 9 absolutely useless." A decision as to the value of section 9 is not necessary at this time. In passing, though, we may say that on account of the recent amendment (Act of 1921, 32 Stats. 282), whereby the prescribed age in section 9 was fixed at 16 years, the law there may be of effective benefit. The question is not as to the *uselessness* of section 9; it concerns the *usefulness* of the constitutional provision. Shall the provision of section 33, article 3, of our highest law, be made useless because the General Assembly has continued to retain as a part of our statutory law the provisions of section 9 of the Criminal Code, which were deemed necessary for the protection of little girls prior to the adoption of our present constitution? *If it is still necessary* in a case of

rape, or of assault with intent to ravish, on an unmarried female under 14 years of age *to show force,* then the constitutional provision was *absolutely useless.*

In the Haddon case, the same postion as to the *uselessness* of section 9 (then section 115) was taken in the dissenting opinion of that very able jurist, Mr. Justice Gary. He said: "I see no use in keeping section 115, Cr. St. on our statute book, if the views of Mr. Justice Jones are correct. * * *" But the majority of the Court, consisting of Chief Justice McIver and Justices Pope and Jones, did not follow the view of their distinguished brother.

The charge of the presiding Judge in this case was, to our mind, a clear exposition of the law of this State relating to an assault with intent to ravish an unmarried woman under the age of 14 years, and it will be reported. It will be seen that, while he instructed the jury that such female could not legally consent to the act, still there had to be shown the *overt act* necessary to constitute the crime of assault with intent to ravish.

The second count in the indictment charged the appellant with the crime of assault and battery of a high and aggravated nature. He complains that the presiding Judge erred in not instructing the jury that a verdict of simple assault and battery could be returned, since that offense is included in the greater one of assault and battery of a high and aggravated nature. While agreeing that a charge of assault and battery of a high and aggravated nature may include a simple assault and battery, we cannot agree with the position of the appellant. Proof in the case, according to the evidence of the State, showed more than a simple assault and battery; it really showed an assault with intent to ravish, if any crime at all had been committed by the appellant. If there was error in the respect complained of, it was in the liberality of the Court in instructing as to assault and battery of a high and aggravated nature. There was really but one issue in the case, the guilt

or innocence of the appellant of the crime of assault with intent to ravish. The evidence of the State, mainly from the lips of the little girl, but corroborated in some respects by other witnesses, tended to show appellant's guilt of that crime. His defense was a denial of any and all wrongdoing. The evidence in his behalf did not tend to show that he was only guilty of assault and battery, either simple or aggravated. There was no request either on the part of the appelland for the charge which he now says should have been given, although twice in the course of the instructions to the jury the Court asked if counsel for the appellant wished any other instructions given.

The appellant further urges that the verdict was indefinite and confusing, and from its language the Court should not have held, and could not have concluded, that the intention of the jury was to find the appellant guilty of assault with intent to ravish. The argument is that, since there were two counts in the indictment, one for assault with intent to ravish and the other for assault and battery of a high and·aggravated nature, the jury may have intended to convict the defendant only of the lesser crime. If we looked to the verdict alone, we would have to disagree with the appellant's contention. We think the language of the verdict is sufficient to show that it was the intention of the jury to find the appellant guilty of the higher offense. *But the matter is made perfectly clear, without the least shadow of doubt,* when the verdict is read in connection with the directions of the Court as to the several forms of verdict which could be returned. The jury were told in clear and simple language if the defendant was found guilty, as charged in the indictment, of the crime of assault with intent to ravish, that the wording of the verdict was to be, "We, the jury, find the defendant guilty as charged." They were further instructed, if they should conclude that the defendant, though guilty of that crime, was entitled to the mercy of the Court, they were to write the verdict in these

words: "We, the jury, find the defendant guilty as charged and recommend him to the mercy of the Court." Too, they were instructed if they should find the defendant guilty merely of an assault and battery of a high and aggravated nature, then they would write, "We, the jury, find the defendant guilty of an assault and battery of a high and aggravated nature." In the charge as to that kind of verdict, *nothing was said* as to a recommendation to mercy, and it was not incumbent upon the Judge to so instruct. While the jury left out the words "as charged," used by the Court, we have no doubt that their purpose was to find the appellant guilty of the higher crime of which he stood indicted. Surely, if the jury's intention had been to convict of the lesser offense only, they would have included the words "assault and battery of a high and aggravated nature" in the verdict. The verdict as rendered, when considered with the very clear instructions of the presiding Judge as to the several verdicts which might be rendered, meets the requirements laid down by Chief Justice McIver, speaking for this Court in *State v. Smith,* 18 S. C., 149, where he said: "* * * a general verdict of guilty furnishes no ground for a motion in arrest of judgment, and no ground for a new trial, *provided the jury have been explicitly instructed that the effect of a general verdict will be to find the party accused guilty of the highest offense charged in the indictment,* and that they have the right to designate in their verdict which one of the particular offenses charged they believed the accused to be guilty of." (Emphasis ours).

We may well repeat, for it entirely covers the matter, what Mr. Justice McIver said, almost as his concluding words, in affirming the judgment of conviction as to Smith: "In the case now before the Court, it is conceded that both of the offenses charged in the indictment grew out of the same act; and it appears that the jury were very explicitly instructed how to shape their verdict so as to show distinctly of what particular offense they believe the parties guilty."

The case of the *State v. Glover,* 27 S. C., 602, 4 S. E., 564, 565, where the opinion was also writeen by Mr. Justice McIver, is even stronger than the Smith case in sustaining our view that the verdict in this case was clearly one finding the appellant guilty of assault with intent to rape. In that case, the defendant was charged in one count with assault and battery with intent to kill, and, in the second count, she was charged with an assault of a high and aggravated nature. The jury rendered a general verdict of guilty, and the appellant sought an arrest of judgment, on the ground that the offense of which she had been convicted amounted to no more than a simple assault and battery. The Court said: "There being two counts in the indictment, and the verdict being a general verdict of guilty, it must be understood to find the highest offense charged, as there was testimony to support it. *State v. Nelson,* 14 Rich., 169 [94 Am. Dec. 130] ; *State v. Scott,* 15 S. C., 434. We must therefore regard this as a conviction under the first count, charging an assault and battery with intent to kill."

In *State v. Johnson,* 45 S. C., 483, 23 S. E., 619, 622, the defendant was tried and convicted under an indictment containing two counts; the first charged burglary and the second larceny. The jury returned a general verdict of guilty. The Circuit Judge held to the effect that there was no testimony as to breaking and entry, but refused to grant a new trial. The Supreme Court, speaking through Chief Justice McIver, ordered a new trial on the ground that the verdict would have to be treated as a verdict of guilty of burglary. The court said: " * * * We think the Judge was bound to grant a new trial; for, the verdict being general, it must, upon well-settled principles, be regarded as a verdict of guilty of burglary,—the highest offense charged in the indictment; and if there was no evidence, as his Honor held, to sustain that charge, then the defendant was clearly entitled, as a matter of law, to a new trial, for otherwise the record would show that he had been convicted of an offense in a case

where it has been judicially ascertained that there was no evidence to connect him with such offense."

In this case there was evidence, as already stated, showing the appellant's guilt of the highest crime charged against him, and the verdict being a general one of guilty with recommendation to the mercy of the Court, which recommendation the jury had the right to make, we are compelled to hold that the verdict was valid and that it properly referred to the first count in the indictment.

The last position of the appellant relates to the sentence. He claims that, the jury having recommended him to the mercy of the Court, the maximum sentence which could be imposed upon him was fourteen and not fifteen years as fixed by the presiding Judge. In this contention, the appellant turns for support to section 9 of the Criminal Code, which sometimes he has urged did not apply to his case. In section 9, there is a proviso to the effect that upon the finding of a certain special verdict of recommendation to mercy, the punishment is reduced from death to imprisonment in the penitentiary for a term not exceeding fourteen years, at the discretion of the Court. But as we have held section 9 inapplicable here, the presiding Judge properly looked to section 8 of the Criminal Code, which is applicable so far as the sentence for assault with intent to ravish is concerned. That section provides, in case of recommendation to the mercy of the Court, that the accused shall be confined at hard labor in the State penitentiary for a term not exceeding forty years or less than five years, at the discretion of the presiding Judge. The sentence imposed upon the appellant was within the terms of the law and the discretion of the Judge. This Court has no legal right to interfere therewith.

The judgment of this Court is that all the exceptions be overruled and that the judgment of the Court of General Sessions of Charleston County be, and the same is hereby, affirmed.

Messrs. Justices Stabler and Carter concur.

Mr. Justice Cothran (dissenting) : I think that there are two substantial grounds for a reversal of the judgment in this case:

(1) In referring to the constitutional provision limiting the age of consent, contained in article 3, § 33, and impliedly declaring its application to the first count in the indictment, the presiding Judge permitted and justified the jury in convicting the defendant of assault with intent to ravish, upon proof that he had attempted intercourse with a maid under the age of 14 years.

(2) The indictment containing two counts, one for assault with intent to ravish, and the other for an assault and battery of a high and aggravated nature, and the verdict being, "We, the jury, find the defendant guilty with recommendation to mercy of the Court," it is impossible to say upon which count the jury intended to convict the defendant; and hence no valid judgment could have been pronounced thereon.

I. It is correctly held, I think, in the leading opinion of the Chief Justice, that the first count does not charge a statutory offense; that, while section 7 of the Criminal Code recognizes the offense of rape as a crime under the common law, and fixes the punishment therefor (limited by the provisions of section 8, in the event of the verdict carrying a recommendation to the mercy of the Court), it does not attempt to define the offense, and that the same may be said of section 8, in reference to the crime of assault with intent to commit the common-law crime of rape; that both are common-law offenses, the statute simply fixing the punishment therefor.

I think too that his analysis of section 9, which creates the offense of intercourse with a maid under 16 years of age, with or without her consent, is entirely correct; that the offense defined and declared punishable therein *"is entirely a statutory offense and distinct from rape"*—citing

*State v. Haddon,* 49 S. C., 308, 27 S. E., 194, 197, where the Court said: "The two offenses, while having some points of resemblance, are distinct and separate." The offense of assault with intent to commit the act inhibited by section 9 is therefore a common-law offense, separate and distinct from that of assault with intent to commit a rape, as are the main offenses.

I agree also with the declaration that the first count of the indictment does not charge the offense defined in section 9, and that the presiding Judge made no reference to it in his charge to the jury. He did, however, charge fully as to the provisions of article 3, § 33, of the constitution, fixing the age of consent, which in my opinion was as objectionable and prejudicial to the defendant as if he had charged as to the provisions of section 9 of the Criminal Code. In fact I think that the Judge's charge inseparably connected the constitutional provision with the first count in the indictment. It is impossible to read the charge without coming to the conclusion that he intended to instruct the jury that, if the maid was under 14 years, she could not legally consent, and that the offense of assault with intent to rape would be made out. He was addressing himself to the immediate offense charged under the first count, assault with intent to rape, and said: "Now with reference to this matter of consenting. There can be no rape where the victim legally consented; *there can be no conviction of an assault with intent to ravish where the alleged victim willingly consented, lawfully, capably and competently assented."*

He then stated the rule at common law as to the age of consent, and read to the jury article 3, § 33, as follows: "* * * No unmarried woman shall legally consent to sexual intercourse who shall not have attained the age of fourteen years."

He then proceeded: "So that, gentlemen, if you should find from the evidence in this case that the defendant W. K. Wilson, sought to and intended to have sexual intercourse

with Helen Forrest, but fell short of the completed act, if you should find that he made an assault upon her for the purpose of having such intercourse, and if you should further find that the prosecuting witness, Helen Forrest, at the time of the alleged assault, was under the age of fourteen years, then I charge you, gentlemen of the jury, that the consent or willingness or indifference or ignorance on her part, if any, as to what was taking place does not excuse, cannot excuse since the constitution of our State directly states that a female under the age of 14 is legally incompetent, incapable of consenting to sexual intercourse. Now whether or not she consented goes out of the case if you find that she is under the age of 14 years."

The objection to the charge is that, upon an indictment for a common-law offense, the State cannot insist upon a verdict based upon evidence of a purely statutory offense. There could be no objection to the Court's calling the jury's attention to the constitutional provision relating to the age of consent, as bearing upon the essential element in the crime of rape, or assault with intent to commit that crime, at common law, that the act was done *forcibly and against the will of the victim*, or, as is sometimes expressed, without her consent; the two expressions in many being held synonymous. As is said in the *Haddon case, supra:* "The constitutional provision operated only on the question of consent to sexual intercourse, creating a new rule of evidence in the proof of consent,—declaring certain persons incapable of consenting. Therefore, under the common law, in an indictment for rape it was necessary to allege that the female was under 10 years old, but, notwithstanding that, proof was allowed, or competent to be made, as to the age of the child, because to prove one incapable of consenting either in law or by reason of physical condition, is tantamount to proving the absence of consent; as, in this State, there may be an indictment for rape without alleging that the female is unmarried and under 14 years old, and under such indict-

ment it may be proven by the State, in its testimony in chief, that the female is unmarried and under 14 years old, in order thereby to establish that the sexual intercourse was without consent, or such proof may be offered by the State in reply to defendant's defense that the female actually consented."

If the presiding Judge had confined his statement to the element of want of consent, there could have been no objection to his referring to the constitutional provision. He should have charged that although that element was supplied by the provision, the main element of force had to be supplied by evidence. In other words, the effect of his charge was to construe the provision as supplying both elements of force and want of consent.

While it is true that the indictment was not framed under section 9, the Court must take notice of the fact that section 9 has been enacted, and it evidently was enacted to create a separate and distinct offense. If the construction attributed to the presiding Judge be correct, the lack of consent declared in the constitution supplies every element of common-law rape, which would render section 9 absolutely useless.

The point is clearly illustrated in the case of *State v. Pickett*, 11 Nev., 55, 21 Am. Rep. 754. The defendant was indicted for rape and was convicted of an assault with intent to commit rape. Upon appeal he excepted to the Judge's charge, in effect, that, if the maid was under 12 years of age, she was incapable of consent, and that the presumption followed that the act *was forcible and against her will,* and that, if his purpose failed, the defendant should be convicted of assault with intent to commit rape. The ground of the exception was that an attempt to commit rape can never constitute an assault where the act was committed with the consent of the maid. The Court defined the offense, in the words of Blackstone as "the carnal knowledge of a woman forcibly and against her will," and declared: "Under this definition, an assault is a necessary ingredient of every rape, or attempted rape. But it is not a necessary ingredient of the

crime of carnally knowing a child under the age of twelve years, with or without her consent, which is defined in the latter part of the section, and which is called 'rape.' It is obvious that here are two crimes differing essentially in their nature, though called by the same name. To one force and resistance are essential ingredients, while to the other they are not essential; they may be present or absent without affecting the criminality of the fact of carnal knowledge. As an assault implies force and resistance, the crime last defined may be committed, or at least attempted, without an assault, if there is actual consent on the part of the female."

Under the Nevada statute, the offense similar to that described in our section 9 was declared to be rape; our statute declares it a felony, "punishable as for a rape." The Court continues: "This is well settled in England, where, under the provisions of several statutes, the carnal knowledge of a female under ten years of age, with or without her consent, is made a 'felony.' The statutory crime is not there denominated 'rape,' and the English judges have escaped the confusion of ideas which in this country has no doubt arisen from the fact that two essentially different crimes have been called by the same name, leading our courts, in some instances, to attribute to the statutory rape all the qualities of common-law rape." The charge was held reversible error.

I do not thing that there can be the shadow of a doubt but that the jury was instructed that, if the child was under 14 years, and therefore incapable of consent, regardless of the essential elements of an assault with intent to ravish, the defendant might be and was convicted of that offense.

II. The verdict was as follows: "We the jury find the defendant guilty with recommendation to mercy of the Court"—upon the indictment which contained two counts, one charging a felony and the other a misdemeanor; the punishment for each being different from that for the other, no valid judgment could have been imposed thereon for the rea-

son that it was impossible to say upon which count the verdict was based.

In the case of *State v. Montague,* 2 McCord, page 257, the syllabus is as follows: "Where there are two or more distinct counts in an indictment, charging different and distinct offenses, and punishable differently, a general verdict of guilty is bad."

In the opinion the Court said: "On the second ground, however, the motion must prevail. [The second ground was 'the uncertainty of the verdict']. There are two distinct counts in the indictment, each charging the prisoner with a different and distinct offense. For each of which offenses, the law has provided a different and distinct punishment. A general verdict of guilty does not show of which offense he was guilty. The judgment of the Court, therefore, cannot be pronounced. A new trial is ordered."

In *State v. Anderson,* 1 Strob. 455, the syllabus is as follows: "Two or more separate offenses may be joined in the same indictment, provided the punishment be identically the same for each; and a general verdict would suffice, although there might be a defective count in the indictment." See, also, *State v. Priester,* Cheves, 103, citing the Montague case.

In *State v. Pace,* 9 Rich., 355, the Court said: "Where there are several counts alleging offenses to which different punishments are applicable, and some are bad, a new trial will be granted to ascertain the sense of the jury, but even in such cases the judgment will not be arrested." Citing the Montague case.

In *State v. Major,* 14 Rich., 76, the Court said: "It is rather the case of distinct counts in the indictment, each charging the prisoner with a distinct and independent offense, for each of which offenses the law has provided a different and distinct punishment, where the general verdict not showing of which offense he is guilty, the Court cannot know what judgment to pronounce. This was Montague's case, 2 McCord, 258."

In *State v. Smith,* 18 S. C., 149, Judge McIver, after reviewing many authorities, concludes thus: "From this review of our cases, we think that the rule to be extracted from them is, that where several distinct offenses are charged in different counts of an indictment, all growing out of the same act or acts, even though subject to different punishments, a general verdict of guilty furnishes no ground for a motion in arrest of judgment, and no ground for a new trial, *provided the jury have been explicitly instructed that the effect of a general verdict will be to find the party accused guilty of the highest offense charged in the indictment,* and that they have the right to designate in their verdict which one of the particular offenses charged they believe the accused to be guilty of."

In addition to this, the learned justice said: "In the case now before the Court, it is conceded that both of the offenses charged in the indictment grew out of the same act; and it appears that the jury were very explicitly instructed how to shape their verdict so as to show distinctly of what particular offense they believed the parties guilty."

The question is whether or not the charge conformed to these plain and direct requirements.

I do not find in the charge a single expression conforming with the requirement "provided the jury have been explicitly instructed that the effect of general verdict will be to find the party accused guilty of the highest offense charged in the indictment." The instruction was: "If you should find the defendant guilty as charged in this indictment with the crime of assault with intent to ravish, you will write on the back of this indictment 'we the jury find the defendant guilty as charged' and sign your name as foreman."

I do not think that this could mean anything else than that, if they found the defendant guilty under the first count, they should write "guilty of assault with intent to ravish," which was the crime "as charged." They were not permitted

to render a general verdict which they did; nor were they "explicitly instructed" what would be the effect of such a verdict.

The rule appears to be that, where an indictment contains counts which may properly be joined in the same indictment, the better practice is to direct the jury to pass in their verdict upon each count; but, if not, to instruct them explicitly upon the effect of a general verdict of guilty which appears to comply with the approved practice. See, also, *State v. Burbage,* 51 S. C. 284, 28 S. E. 937; *State v. Sheppard,* 54 S. C., 178, 32 S. E., 146; *State v. Norris,* 65 S. C., 287, 43 S. E., 791; *State v. Rountree,* 80 S. C., 388, 61 S. E., 1072, 22 L. R. A. (N. S.) 833; *State v. Bolyn,* 143 S. C., 63, 141 S. E. 165; 27 R. C. L. 856; *State v. Johnson,* 75 N. C., 123, 22 Am. Rep. 666.

I think therefore that the judgment should be reversed and a new trial ordered.

Mr. Justice Bonham concurs in proposed result.