279 P.2d 850

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Benny SANDOVAL, Defendant-Appellant.**

No. 5848.

Supreme Court of New Mexico.

Feb. 2, 1955.

Richard C. Losh, Albuquerque, for appellant.

Richard H. Robinson, Atty. Gen., Henry A. Kiker, Jr., Asst. Atty. Gen., Fred M. Standley, Asst. Atty. Gen., for appellee.

COMPTON, Chief Justice.

Appellant was convicted by a jury of Bernalillo County of the crime of assault with intent to rape, and he appeals.

As a first point appellant challenges the sufficiency of the evidence to support the conviction. A review of the evidence becomes necessary. On the night of July 13, 1954, appellant followed the prosecuting witness as she was driving to her home in an automobile from the eastern part of the City of Albuquerque. At various times he would drive up beside her automobile and blink his lights and then fall behind. Finally, he dashed up beside her and stopped her automobile on Indian School Road, near St. Anthony's Orphanage. The prosecuting witness, thinking that appellant was a police officer, pulled her automobile slightly to the right and stopped. Appellant got out of his automobile and what followed is related by her, as follows:

"A. Well, I waited. I didn't cut my motor or anything. Someone got out on the left side of the car and came around, and the minute he came into sight, I saw a strange man and I got scared. I knew what had happened. I was going to drive off. I hadn't turned the motor off. Our car coughs, you have to gun it a little before it catches. I suppose I was nervous; it just moved a couple of inches. I couldn't get it to drive away. I didn't think to lock my door. I just watched him running to my car. He said, 'I see you have been speeding, haven't you,' and he opened the door.

"Q. Which door of the car did he open? A. Right beside where I was driving. I am pretty sure I pulled the horn and held it until he dragged me out. When I got outside, I started to yell 'Help, help, help.'

"Q. Did he say anything to you besides 'you have been speeding.' A. No, he didn't; at this particular time he didn't.

"Q. Go ahead. He drug you out of the car? A. He pulled me out of the car. I tried to hang on. I think he was hitting me on the head. He pulled me out and kept hitting.

\* \* \* \* \* \*

"Q. When he drug you out of the car, you say you fell down on the ground? A. He hit me several times so hard that I fell down.

"Q. Did he say anything to you after that? A. Well, he was hitting me, and I don't know if he dragged me or what, at one point I was on my knees, he was holding my hair like this and hitting me in the face like that. I wanted him to stop hitting me. I said, I just wanted him to stop, I said, 'No, no, no, please don't,' and at that point he stopped hitting me. He said, Oh, then we were right beside the back door of his car. His car was kind of behind my car like that, and he said when I began to plead with him, 'No, no, please don't,' he said, 'Do you want it to be in my car or yours?'

"Q. What did you say? A. I said, naturally, to delay, 'Make it mine.' He let go of me, and I hadn't expected him to let go. He got in his car, and I stood, and I started, that was the first time I noticed the home right over there. I hadn't noticed where I was particularly before, and I started to walk fast, watching him. It occurred to me he might have a gun and shoot. He said, 'Don't go away, don't go away.' He didn't shoot or anything. I ran in there. I started screaming again. I had stopped after he was hitting me so much.

"Q. When he was hitting you had you made any outcries at all? A. At first, yes, when he first dragged me out, I honked the horn, and as he dragged me out, I yelled. I saw a light on Indian School Road. I tried to throw my voice at that car. I don't know where the car ever went."

■ The evidence discloses many attendant and undisputed facts in corroboration of the prosecuting witness. When she ran to St. Anthony's Orphanage, she was hysterical, her hair and clothing were disheveled, and her face was bloody and swollen. There were contusions on her arms and legs. Her lips were swollen and bloody. Her screams for help were heard some 1000 feet away. The arresting officer, through information furnished by the victim and others, traced the automobile which he was driving to his home, where he was found. He was there informed of the nature of the charge against him and placed under arrest. At the time there were fresh lacerations on his left hand. The officer said, "it looks like you got yourself in quite a mess", and appellant replied, "yes, I guess so." Further, appellant's statement to the prosecutrix, "will it be in my car or yours", clearly signified his intention in assaulting her. The evidence is substantial and the verdict will not be disturbed. State v. Compos, 56 N.M. 89, 240 P.2d 228; State v. Neville, 47 N.M. 345, 143 P.2d 264, 265. Our holding in the latter case is appropriate here:

"We have said that there must be substantial evidence to establish that the person charged with such an offense 'intended to have intercourse with the female by force and against her will, and that he not only used force where an assault is charged, but used such force with the intention at the time to have sexual intercourse with her in defiance of, and notwithstanding, any resistance she might make'. * * * But this is not to say that the intention which accompanied such force might not be thereafter abandoned and the force relaxed before the original purpose of the assault is achieved."

■■ It is asserted that the trial court erred in refusing to submit to the jury an instruction as to included offenses, that is, assault with intent to commit a felony and assault and battery. This argument must be rejected. While lessor offenses necessarily may be included, it is only where there is ·some evidence tending to reduce the offense charged to a lessor degree or grade, that a refusal to instruct as to included offenses, is error. From our review of the evidence, the proof goes to the higher offense and would not justify any other verdict except a conviction of the crime charged, or an acquittal. Territory v. Salazar, 3 N.M., Gild., 321, 5 P. 462;. State v. Smelcer, 30 N.M. 122, 228 P. 183, and State v. Reed, 39 N.M. 44, 39 P.2d 1005, 102 A. L.R. 995. Cf. State v. Goodson, 54 N.M. 184, 217 P.2d 262; State v. Jones, 233 Iowa 843, 10 N.W.2d 526; Molton v. People, 118 Colo. 147, 193 P.2d 271; State v. Brady, 66 Ariz. 365, 189 P.2d 198; State v. Wilson, 162 S.C. 413, 161 S.E. 104, 81 A.L.R. 580; 53 Am.Jur. (Trial) § 798.

■■ Appellant did not testify as a witness in his own behalf and during the opening argument the district attorney commented upon his failure to testify. In the closing argument he made similar comments. It is appellant's contention that § 41–12–19, 1953 Comp., permitting such comment, is unconstitutional; that in any event, the court abused its discretion. We find no merit to either contention. The applicable constitutional and statutory provisions read:

Article 2, Section 15, New Mexico Constitution.

"No person shall be compelled to testify against himself in a criminal proceeding, * * *."

Section 41–12–19, 1953 Compilation.

"In the trial of all indictments, informations, complaints and other proceedings against persons charged with the commission of crimes, offenses, and misdemeanors in the courts of this state, the person so charged shall, at his own request but not otherwise, be a competent witness. His failure to testify shall create no presumption against him, but may be the subject of comment or argument. In trials in in the district court such comment or argument shall be within the discretionary control of the court, and shall entitle the accused to an instruction that the jury shall indulge no presumption against the accused because of his failure to testify."

Appellant does not point to any action of the court tending to show an abuse of discretion; nor is the statute violative of any constitutional guaranty against self-incrimination. The section is a procedural rule promulgated by us July 1, 1934. It supersedes § 1, Ch. 13, L.1880, Section 45–

504, 1929 Comp., by deleting therefrom the term "and his failure to make such request shall not create any presumption against him", and adding thereto the remaining portion of the section. The rule is within the province of the court's rule making power and does not affect substantive rights of the accused. Cf. State v. Arnold, 51 N. M. 311, 183 P.2d 845, and State v. Roy, 40 N.M. 397, 60 P.2d 646, 110 A.L.R. 1.

While the question presented is novel in this jurisdiction, the right to comment on the failure of the accused to testify has been before the courts of other jurisdictions. In State v. Cleaves, 59 Me. 298, 8 Am.Rep. 422, the court held:

"The statute authorizing the defendant in criminal proceedings, at his own request, to testify, was passed for the benefit of the innocent and for the protection of innocence.

"The defendant in criminal cases, is either innocent or guilty. If innocent, he has every inducement to state the facts, which would exonerate him. The truth would be his protection. There can be no reason why he should withhold it, and every reason for its utterance.

"Being guilty, if a witness, a statement of the truth would lead to his conviction, and justice would ensue. Being guilty, and denying his guilt as a witness, an additional crime would be committed, and the peril of a conviction for a new offense incurred.

"But the defendant, having the opportunity to contradict or explain the inculpative facts proved against him, may decline to avail himself of the opportunity thus afforded him by the law. His declining to avail himself of the privilege of testifying is an existent and obvious fact. It is a fact patent in the case. The jury cannot avoid perceiving it. Why should they not regard it as a fact of more or less weight in determining the guilt or innocence of the accused?

\*　　\*　　\*　　\*　　\*　　\*

"It has been argued that this view of law places the prisoner in an embarrassed condition. Not so. The embarrassment of the prisoner, if embarrassed, is the result of his own previous misconduct, not of the law　\*　\*　\*"

In the recent case of State v. Baker, 115 Vt. 94, 53 A.2d 53, the exact question was before that court and construing comparable constitutional and statutory provisions, it held that the comments of the prosecutor on the failure of the accused to testify, did not create a condition which did not already exist, and affirmed the conviction.

Appellant leans heavily on State v. Wolfe, 64 S.D. 178, 266 N.W. 116, 122, 104 A.L.R. 464, where the South Dakota Court held that an act similar to ours, contra-

vened their constitution. We notice, however, a divided court, 3 to 2, Justice Rudolph and Circuit Judge Bakewell dissenting. The dissenting opinions are forceful, and lend added support to our conclusion. We note with interest the statement attributed to Chief Justice Hughes as quoted in Justice Rudolph's dissenting opinion:

"'It is clear that reversals because a prosecuting attorney has directed the attention of the jury to a circumstance which no intelligent person can help taking into consideration of his own accord, should have no place in any well ordered system of criminal procedure.'"

We can readily trace the history of § 41–12–19. The rule followed the adoption by the American Law Institute in 1931 of a resolution providing that:

"The judge, the prosecuting attorney and counsel for the defense may comment upon the fact that the defendant did not testify." 9 Proc.Am.Law Inst., 202–218.

The question was pursued further. The same year, the American Bar Association adopted a similar resolution:

"That by law it should be permitted to the prosecution to comment to the jury on the fact that a defendant did not take the stand as a witness; and to the jury to draw the reasonable in-

ferences." 56 American Bar Association Report, 137–152.

Other questions have been urged as a ground for reversal of the judgment. We have considered them and find they do not present a substantial issue. There is no error in the record.

The judgment will be affirmed, and it is so ordered.

LUJAN, SADLER and McGHEE, JJ., concur.

KIKER, J., not participating.