Floyd Wayne PEARCE, Appellant,

v.

Harold A. COX, Warden, New Mexico State Penitentiary, Appellee.

Frank WHITING, Appellant,

v.

Harold A. COX, Warden, New Mexico State Penitentiary, Appellee.

Franklin Melvin ARCHIE, Appellant,

v.

Harold A. COX, Warden, New Mexico State Penitentiary, Appellee.

Roy Dee DEAN, Appellant,

v.

Harold A. COX, Warden, New Mexico State Penitentiary, Appellee.

Leopoldo GARCIA, Appellant,

v.

Harold A. COX, Warden, New Mexico State Penitentiary, Appellee.

Billy K. McCOMBS, Appellant,

v.

Harold A. COX, Warden, New Mexico State Penitentiary, Appellee.

Edward M. FRAZEE, Appellant,

v.

Harold A. COX, Warden, New Mexico State Penitentiary, Appellee.

Frank EDWARDS, Appellant,

v.

Harold A. COX, Warden, New Mexico State Penitentiary, Appellee.

Joseph M. LOVETT, Appellant,

v.

Harold A. COX, Warden, New Mexico State Penitentiary, Appellee.

Ted VILLANUEVA, Appellant,

v.

Harold A. COX, Warden, New Mexico State Penitentiary, Appellee.

Leonor VIGIL, Appellant,

v.

Harold A. COX, Warden, New Mexico State Penitentiary, Appellee.

Raymond Gene PATTERSON, Appellant,

v.

Harold A. COX, Warden, New Mexico State Penitentiary, Appellee.

Raymond ORTEGA, Appellant,

v.

Harold A. COX, Warden, New Mexico State Penitentiary, Appellee.

Willard Morris FARRIS, Appellant,

v.

Harold A. COX, Warden, New Mexico State Penitentiary, Appellee.

Harry Lee CHARLTON, Appellant,

v.

Harold A. COX, Warden, New Mexico State Penitentiary, Appellee.

John Clinton ALLEN, Appellant,

v.

Harold A. COX, Warden, New Mexico State Penitentiary, Appellee.

Joseph Coy WORDEN, Appellant,

v.

Harold A. COX, Warden, New Mexico State Penitentiary, Appellee.

Julian Victor GAONA, Appellant,

v.

Harold A. COX, Warden, New Mexico State Penitentiary, Appellee.

Carl Clayton GILSTRAP, Appellant,

v.

Harold A. COX, Warden, New Mexico State Penitentiary, Appellee.

Nos. 8142, 8145, 8146, 8148, 8149, 8151, 8170, 8182, 8186, 8213, 8221, 8239, 8240, 8246, 8247, 8252, 8256, 8261, 8267.

United States Court of Appeals
Tenth Circuit.

Dec. 22, 1965.

888

Ancel W. Lewis, Jr., Denver, Colo., for appellant F. W. Pearce.

William B. Chasteen, Denver, Colo., for appellants F. Whiting, E. M. Frazee and C. C. Gilstrap.

Gordon D. Prinster, Denver, Colo., for appellant F. M. Archie.

Alan H. Bucholtz, Denver, Colo., for appellant R. D. Dean.

Roger W. Redman, Denver, Colo., for appellants L. Garcia and F. Edwards.

William D. Jochems, Denver, Colo., for appellant B. K. McCombs.

D. L. Glenn, Denver, Colo., for appellants J. M. Lovett and J. C. Allen.

E. Michael Canges, Denver, Colo., for appellants T. Villanueva, R. G. Patterson, R. Ortega, J. C. Worden and J. V. Gaona.

Walter J. Landin (Clark A. Floyd and D. L. Glenn, Denver, Colo., on brief), for appellant L. Vigil; for appellant W. M. Farris.

Clark A. Floyd, Denver, Colo., for appellant H. L. Charlton.

L. D. Harris, Sp. Asst. Atty. Gen. (Boston E. Witt, Atty. Gen., on brief), for appellee.

Before PHILLIPS, LEWIS and HILL, Circuit Judges.

ORIE L. PHILLIPS, Circuit Judge.

These are appeals from orders denying relief on applications for writs of habeas corpus by persons confined under judgments and sentences of New Mexico state courts.

At the hearings below, each applicant was represented by counsel and was accorded an evidentiary hearing at which he testified in his own behalf.

The several appeals involve many common questions of law and like questions of fact and were consolidated for argument.

### The Applicable Principles of Law

We shall first undertake to set forth the applicable principles of law and then deal with each case separately.

Section 14 of Article II of the New Mexico Constitution, in part here pertinent, provides:

"No person shall be held to answer for a capital, felonious or infamous crime unless on a presentment or indictment of a grand jury or information filed by a district attorney or attorney general or their deputies, * * *. No person shall be so held on information without having had a preliminary examination before an examining magistrate, or having waived such preliminary examination."

Sections 41–3–1 to 41–3–16, inclusive, N.M.Stat.Ann.1953, prescribe the procedure and define the duties of the examining magistrate and of the district attorney at a preliminary examination of a person charged with a capital, felonious, or infamous crime.[1]

Section 41–3–10 provides that whenever in the discretion and judgment of the district attorney it is deemed advisable for the perpetuation and preservation of testimony introduced at the preliminary examination, he may employ a stenographer to take down the evi-

---

1. Section 41–3–1 provides that when a defendant is brought before an examining magistrate for a preliminary examination, the magistrate must immediately inform him of the charge against him and of his right to the aid of counsel at every stage of the proceedings and also his right to have or to waive a preliminary examination.

Section 41–3–2 provides that the magistrate must allow the defendant a reasonable time to send for counsel and, on request of the defendant, require a peace officer to take a message from defendant to counsel.

Section 41–3–7 provides that the magistrate must read the complaint to the defendant and issue subpoenas for any witnesses required by the "prosecutor or the defendant."

Section 41–3–8 provides that the witnesses must be examined in the presence of the defendant and may be cross-examined by him, and that on the request of the prosecuting attorney, or of the defendant, all of the testimony must be reduced to writing and signed by the witnesses or taken in shorthand and transcribed and filed with the clerk of the state district court.

dence, reduce the same to writing, duly certify the transcript under oath, and deliver it and his notes to the district attorney, and that he may present the same to the grand jury next convened.

Section 41–3–12 provides that if there is no probable cause for charging the defendant, the magistrate shall discharge him, but if it appears that an offense has been committed and there is probable cause to believe the defendant guilty, the magistrate shall bind the defendant over to the appropriate state district court.

Section 41–3–15 provides that the magistrate shall file the papers pertaining to the case with the clerk of the district court on or before the first day of the next term of such court.

Rule 43(a) (1) of the Rules of Civil Procedure of New Mexico (effective November 1, 1942), § 21–1–1 (43), N.M. Stat.Ann.1953, provides:

"(1) *When Testimony At Another Trial Can Be Used.* The testimony of any witness taken in any court, state or federal, in this state may be used in any subsequent trial or hearing of the same issue between the same parties in the following cases:

"(i) When the witness is dead or insane.

"(ii) When the witness is a nonresident of this state.

"(iii) When after diligent effort the whereabouts of the witness cannot be ascertained."

Section 45–407, N.M.Stat.Ann.1929, contained substantially the same provision, except it was limited to the testimony of a witness taken in a New Mexico state court. In State v. Moore, 40 N.M. 344, 59 P.2d 902, it was held that a transcript of the testimony of a witness given at a preliminary examination could be introduced by the state at a subsequent trial of the accused, where such witness was then absent from the state.

It is the practice at preliminary examinations in New Mexico for the magistrate to arraign the defendant and require him to enter a plea to the charge and to state whether or not he desires to waive a preliminary examination and to treat a plea of guilty as such a waiver.

■ We hold that the preliminary examination, from the arraignment of the defendant until the end of the examination, is a critical stage of the criminal proceedings against the defendant. This, because a defendant needs the advice and assistance of counsel at the time of his arraignment, the entry of a plea, and his announcement as to whether he desires or waives a preliminary examination, and because he needs the assistance of counsel in cross-examining the state's witnesses at the preliminary examination, since the transcript of the testimony of such witnesses may thereafter be presented to the grand jury next convened and under any of the three circumstances stated in Rule 43, supra, may be introduced in evidence against the accused at his trial in the state district court for the offense with which he is charged.

■ It is not necessary for an indigent defendant to request the appointment of counsel in order to preserve his right to counsel.[2]

■ Unless the right to be represented by counsel at a preliminary hearing is competently, intelligently, and voluntarily waived, the fact that the defendant was not so represented at the preliminary examination vitiates that hearing. But this does not mean that the defendant is thereby rendered immune from prosecution thereafter for the offense in the state district court in a proceeding in which he is accorded all of his constitutional rights and in which no acts or omissions at the preliminary examination prejudicially affect him.[3]

■ He may be charged by information in the state district court, not-

2. Rice v. Olson, 324 U.S. 786, 788, 789, 65 S.Ct. 989, 89 L.Ed. 1367.

3. State v. Kirkland, 82 N.J.Super. 409, 197 A.2d 876, 879.

withstanding he either has not had a preliminary examination or has not had a valid preliminary examination. Of course, he is entitled to be represented by counsel, either of his own choosing or appointed by the court, at every critical stage of the proceeding in the district court. He may challenge the right of the state to proceed against him until he has been accorded a valid preliminary hearing, unless he has theretofore waived his right thereto. Such challenge may be made by a plea in abatement or any other appropriate manner. When a violation of the defendant's constitutional rights in the proceeding before the magistrate is brought to the attention of the state trial court and found to exist, it is the accused's right to have the information abated, and the court's duty to abate it, until there has been a proper preliminary examination, and to remand the accused to the magistrate for such examination, unless the accused competently, intelligently, and voluntarily waives his right to such examination. But the state district court does not lose jurisdiction of the information theretofore filed by abating it and remanding the accused to the magistrate for a proper preliminary examination, nor is there any requirement for the filing of a new information after such preliminary examination has been held.[4]

■ The defendant may waive his right to have the proceeding on the information abated and to be remanded to a magistrate for a preliminary examination, and, under the New Mexico decisions, he does waive that right by competently, intelligently, and voluntarily entering a plea to the information.[5]

■ It is a general rule that the federal courts will follow the interpretation of the constitution and laws of a state by the highest court of that state,[6] unless such interpretation is inconsistent with the fundamental principles of liberty and justice.[7]

■ A preliminary examination is unknown to the common law [8] and an accused is not entitled to such an examination, unless it is given him by constitutional or statutory provision.[9]

■ A defendant in a state court is not entitled to a preliminary examination by virtue of a federal constitutional right.[10]

Accordingly, we follow the holding of the Supreme Court of New Mexico that a defendant waives his right to a preliminary examination when he competently, understandingly, and voluntarily pleads to an information, without challenging the information on the ground that he had not been accorded either a preliminary examination or a valid preliminary examination.

*1. Vigil's Appeal—No. 8221*

Vigil, the applicant for the writ, was arrested in Rio Arriba County, New

4. State v. Vaughn, 74 N.M. 365, 393 P.2d 711, 714; State v. Bailey, 62 N.M. 111, 305 P.2d 725, 726; State v. Rogers, 31 N.M. 405, 247 P. 828, 834.

5. State v. Bailey, supra; State v. Gallegos, 46 N.M. 387, 129 P.2d 634, 635; State v. Vigil, 33 N.M. 365, 266 P. 920, 921.

6. Silva v. Cox, 10 Cir., 351 F.2d 61, 64; Hebert v. State of Louisiana, 272 U.S. 312, 316, 47 S.Ct. 103, 71 L.Ed. 270; Knoell v. Frisco Lease, 10 Cir., 78 F.2d 286, 289; Tafarella v. Hand, 10 Cir., 294 F. 2d 67, 68, cert. den. 369 U.S. 823, 82 S.Ct. 836, 7 L.Ed.2d 788; Highland Farms Dairy v. Agnew, 300 U.S. 608, 613, 57 S.Ct. 549, 81 L.Ed. 835.

7. Bute v. People of State of Illinois, 333 U.S. 640, 649, 68 S.Ct. 763, 92 L.Ed. 986;

Silva v. Cox, supra; Hebert v. State of Louisiana, supra; State ex rel. Stevenson v. Jameson, 78 S.D. 431, 104 N.W. 2d 45, 49.

8. State v. Badders, 141 Kan. 683, 42 P.2d 943, 945; State v. Hackney, 240 N.C. 230, 81 S.E.2d 778, 783; State v. Smith, 32 N.J. 501, 161 A.2d 520, 539, cert. den. 364 U.S. 936, 81 S.Ct. 383, 5 L.Ed.2d 367.

9. State v. Jameson, supra; State v. Hackney, supra; State v. Smith, supra; State v. Spears, 76 Wyo. 82, 300 P.2d 551, 555.

10. Commonwealth ex rel. Nichols v. Hendrick, 197 Pa.Super. 646, 180 A.2d 88, 89; Dillard v. Bomar, 6 Cir., 342 F.2d 789, 790; Goldsby v. United States, 160 U.S. 70, 73, 16 S.Ct. 216, 40 L.Ed. 343; Silva v. Cox, supra.

Mexico, January 6, 1960. The next day he was taken before a justice of the peace for Rio Arriba County for a preliminary examination, on a charge of rape of a three-year, nine-month-old female child. The transcript of the preliminary examination proceedings before the justice of the peace, which was introduced in evidence by Vigil at the hearing on the application for the writ, shows that Vigil was arraigned and his rights generally explained to him; that he stated he did not know whether he had committed the offense or not, and that he requested a preliminary hearing. The justice of the peace entered a plea of not guilty for Vigil and set the matter for further hearing on January 8, 1960.

At the commencement of the hearing on that date, the Assistant District Attorney for Rio Arriba County stated that Vigil had been notified of his right to counsel and given a day and one-half to secure counsel. Vigil stated that the sheriff did not let him see anybody or contact any of his family, and that he had not been able to consult an attorney, but was ready to proceed. The sheriff then stated that Vigil had not contacted him with respect to consulting a lawyer. Thereupon, the hearing proceeded. Witnesses were called and testified in behalf of the state. The state's evidence was amply sufficient to establish Vigil's guilt beyond a reasonable doubt.

Vigil undertook to cross-examine the state witnesses and also testified in his own behalf that he was drunk; that he did not remember what actually happened; that he felt "awful" and that he was even thinking of "doing something with myself"; that because of drunkenness he lost his head, but that he got drunk of his own free will; that he had no explanation of the blood on his clothes or the child's clothes; that he did not ask the county sheriff or any other officer for permission to call a lawyer; but did ask the jailer to permit him to get in touch with his people by telephone and that his request was denied.

At the close of the preliminary examination, Vigil was bound over to the district court.

At the hearing on the application for the writ, Vigil introduced a certified transcript of the proceedings at the arraignment and the sentencing. Vigil testified at such hearing that he did not request the sheriff to aid him in consulting a lawyer, but that he asked permission of the "jailers" to telephone his mother and his brother to request them to secure a lawyer for him, but that the "jailers" denied his request, saying they had orders not to permit him to contact or telephone anyone.

During his incarceration and prior to July 5, 1960, Vigil escaped from jail twice, but both times he was reapprehended. He was charged by separate informations with statutory rape, escape, and assault. On the last-mentioned date, he was taken before the state district court for arraignment.

Bertrand B. Prince, a member of the New Mexico bar, a former state district attorney, and an experienced criminal lawyer, appeared as counsel for Vigil. Vigil entered pleas of guilty to the information charging rape and to an information charging one of the escapes. The district attorney dismissed the other escape charge and the assault charge.

Before receiving the pleas of guilty, the court advised Vigil as to the two charges and asked him if he understood them. Vigil answered in the affirmative. In answer to the court's further questioning, Vigil stated that his attorney had explained his rights to him and had advised him that he was entering pleas of guilty to felony charges, that he understood the penalty for each of such charges was imprisonment in the state penitentiary, and that no promises of any kind had been made to him by the law enforcement officers, the district attorney or any of his staff, and particularly, no promises of clemency had been made if he entered pleas of guilty.

Thereupon, the pleas of guilty were received and entered. Thereafter, on July 8, 1960, the matter came on for the im-

position of sentences. Vigil appeared again in person and by Prince, his counsel. The court inquired whether Vigil or his attorney had anything to say before the sentences were imposed. Prince stated that from his investigation of the facts he understood that Vigil was addicted to the use of alcohol and had been for many years; that at the time of the commission of the rape offense Vigil was so intoxicated that he did not remember what occurred; that he understood there was evidence of penetration, but it was uncertain whether it was done with the finger or the penis, but that he did not think he could successfully maintain that defense in a trial to a jury, and asked that the sentences on the rape charge and the escape charge run concurrently.

The transcript of the proceedings and the testimony at the preliminry examination were available to Prince. He had strong reason to conclude that Vigil would be convicted if he was tried on the rape charge and also on the escape charge. Blood on the child's panties, on the crotch area of the clothes worn by Vigil at the time of the offense and on the bedsheet of the bed and other circumstances afforded abundant proof that the penetration was by Vigil's penis.

Nothing that happened during the preliminary examination which was detrimental to Vigil was used against him in the district court.

It is clear from the record that Prince acted wisely and gave Vigil effective and competent representation in advising him to plead guilty to two of the charges and seek the mercy of the court.

Accordingly, we conclude that the finding of the lower court that Vigil was competently and adequately represented by counsel and knowingly, intelligently, and voluntarily entered pleas of guilty to the two charges is supported by the evidence, and that Vigil suffered no prejudice in the state district court by anything that transpired during the preliminary examination.

Affirmed.

## 2. Worden's Appeal—No. 8256

On January 10, 1962, a complaint was filed before a justice of the peace for Precinct No. 18, Lea County, New Mexico, charging Worden with the offenses of armed robbery and conspiracy to commit a felony. Worden was questioned by the Captain of Detectives of the Hobbs Police Department and the Sheriff of Lea County, New Mexico. He admitted to the officers that he committed the robbery and identified the gun which he used in the commission of the same. Thereafter he was taken before the justice of the peace for a preliminary examination.[11] He was arraigned and entered a plea of guilty to the complaint. Thereafter, on January 12, 1962, he was again taken before the justice of the peace. Worden requested the appointment of counsel. The request was denied. The district attorney asked permission to introduce evidence, notwithstanding Worden had pleaded guilty. The police officer and the sheriff were called as witnesses. Neither of them testified that either before or at the time of the interrogation Worden was advised of his right to counsel, of his right not to make a statement, or that if he made a statement it could be used against him.

At the hearing on the application for the writ, a certified copy of a two-count information, filed January 15, 1962, and transcripts of the proceedings in the state district court were introduced in evidence, from which the following facts appear:

On February 6, 1962, Worden was taken before the state district court for arraignment. The court asked him if he had an attorney. Worden answered, "No." The court then asked him if he wished to confer with an attorney before entering a plea and Worden said, "Yes." The court then said, "Mr. Markley, will

11. At the trial below on the application for the writ, Worden introduced a duly certified transcript of the proceedings and the evidence adduced at the preliminary examination.

you talk to this man?" The court minutes for February 6, 1962, show an order appointing Harvey C. Markley "as counsel to advise the defendant herein." Markley conferred with Worden on February 6, 1962, and thereafter returned to open court with Worden and entered pleas of not guilty for him. On February 20, 1962, Worden again appeared in the district court, accompanied by Markley. Thereupon, Markley stated to the court that Worden desired to withdraw his pleas of not guilty and enter pleas of guilty to the information; that he had talked to Worden and that he had no criminal record, except a conviction for the offense of driving while intoxicated; that since the Second World War Worden had drunk alcoholic liquors to excess; that Worden desired to make restitution of the money he had taken in the robbery and to undertake to overcome his addiction to alcohol. The court then permitted the pleas of not guilty to be withdrawn and pleas of guilty to be entered. Worden was sentenced to imprisonment in the state penitentiary for not less than one nor more than fourteen years on the first count, charging conspiracy, and not less than three nor more than twenty-five years on the second count, charging armed robbery.

At the hearing on the application for the writ, Worden testified that after Markley was appointed to advise him, he discussed his case with Markley, and that the latter stated he was not appointed to represent Worden, but that he "would make a plea if I wanted to enter a plea that day," and that Markley further told him he would not represent him on a trial of his case to a jury. The informal statement of the court and the limited wording of the order of appointment tend to bear out Worden's testimony.

It may be that Markley, after discussing the matter with Worden and examining the transcript of the testimony at the preliminary examination, which was available to him, concluded that it would be best for Worden to plead guilty, but the respondent did not see fit to introduce evidence showing the extent of Markley's investigation of the case or the basis for the advice he gave Worden to plead guilty.

It is our opinion that the evidence did not support the finding of the trial court that the plea of guilty to each count of the information was entered by Worden competently, understandingly, and voluntarily.

Reversed, with instructions to vacate the order and permit the respondent, if he is so advised, to undertake to establish by evidence that Markley effectively and adequately represented Worden, and that the pleas of guilty were competently, intelligently, and voluntarily entered.

### 3. Whiting's Appeal—No. 8145

In May, 1963, Whiting was charged by a complaint containing four counts, filed before a justice of the peace of Bernalillo County, New Mexico. Two of the counts charged the unlawful possession of marijuana, and two the unlawful sale of marijuana. Whiting was taken before the justice of the peace, arraigned on the complaint, and entered pleas of not guilty.

Thereafter, on May 13, 1963, the matter came on for a preliminary examination. Whiting was not represented by counsel at the preliminary examination. The justice of the peace advised Whiting that he could question the state witnesses and asked Whiting if he was ready to proceed. Whiting answered in the affirmative. The state witnesses were then called and testified. Whiting undertook to cross-examine them, and in an effort to exculpate himself admitted, in effect, that he had participated in transactions with two of the state witnesses involving marijuana.

On May 14, 1963, an information containing four counts was filed against Whiting in the district court, two counts charging him with sales, and two with possession of marijuana.

On the following day, the district court appointed George P. Jones, a duly licensed and practicing attorney of the courts of New Mexico, to represent Whiting. Whiting consulted with Jones

and told him about the preliminary examination. Jones considered the advisability of requesting a new preliminary examination, but later decided not to do so. While the record is not entirely clear, it is fairly apparent that pleas of not guilty were first entered for Whiting. Thereafter, on August 26, 1963, Whiting appeared in person and with his attorney, Jones, and entered a plea of guilty to the first count of the information. The remaining three counts were dismissed and the district attorney also agreed to dismiss another felony charge against Whiting. Before entering the plea of guilty, apparently an arrangement was made by Jones with the district attorney to dismiss the second, third and fourth counts of the information and the other felony charge, if Whiting pleaded guilty to one count.

At the hearing in the court below on the application for the writ, Whiting did not claim that he suffered any prejudice as a result of what transpired in the preliminary examination, or that he pleaded guilty because of anything that occurred at such preliminary examination. He did not claim that Jones did not competently represent him. His own explanation of the plea of guilty was that he was tired of staying in jail and thought it would be better to make a deal with the district attorney and plead guilty and he so advised Jones.

The evidence adduced at the preliminary examination, the transcript [12] of which was available to Jones, was amply sufficient to support verdicts of guilty on each of the four counts of the information.

■ We are of the opinion that the finding of the trial court that Whiting had effective and adequate assistance of counsel and entered a plea of guilty competently, intelligently, and voluntarily was well supported by the evidence.

Affirmed.

### 4. Dean's Appeal—No. 8148

On September 12, 1961, a complaint was filed before a justice of the peace of Precinct 6, Eddy County, New Mexico, charging Dean, the applicant for the writ, with grand larceny. On September 21, 1961, Dean was arraigned in the justice of the peace court and entered a plea of not guilty. A preliminary examination was held and he was bound over to the state district court.

Thereafter, an information was filed in the district court of Eddy County, containing two counts, the first charging Dean with grand larceny of property of the City of Artesia and the second charging him with grand larceny of property of the Lane-Wells Company.

On October 2, 1961, Dean appeared in the state district court, accompanied by his attorney, James F. Warden, and entered a plea of guilty to the first count of the information. Thereupon, the district attorney dismissed the second count.

At the hearing below on the application for the writ, certified copies of the information, the docket entries [13] of the justice of the peace court and the district court records reflecting the entry of the plea, the dismissal of Count Two, and the sentence imposed, were introduced in evidence by Dean.

At the hearing below, Dean testified that he believed he requested the justice of the peace to appoint an attorney to represent him and that the justice stated that an attorney would be appointed for him in the district court and that he did not employ an attorney to represent him at the preliminary hearing.

He further testified that he admitted the theft of the property charged in the first count, but that it was not worth more than $18, the price at which he sold it to a junk dealer, and that he believed if he had had an attorney at the preliminary hearing, he would have been able to show the pipe was not worth $50.

---

12. A certified copy of such transcript was introduced at the hearing on the application for the writ.

13. Such docket entries do not reflect the appearances of counsel at the preliminary examination.

Dean further testified that the pipe was secondhand, but admitted that one of the witnesses at the preliminary examination testified that the pipe was new and worth $200. He further admitted that he did nothing to incriminate himself at the preliminary hearing; that Warden had advised him his sentence would be one to ten years, and he knew that would be the sentence if he entered his plea of guilty.

Alan H. Bucholtz, appointed counsel for Dean on the appeal in this court, addressed a letter to Warden with respect to Dean's case. In reply, Warden forwarded to Mr. Bucholtz duly certified copies of the justice of the peace's records of the proceedings at Dean's preliminary examination. They show that James Warden appeared as attorney for Dean at the preliminary examination; and in a cover letter Warden stated that his notes and information indicated that the pipe was valued at over $240. The district court records do not reflect any appointment of Warden as counsel for Dean.

Mr. Bucholtz attached to his brief copies of Warden's letter to him and of the records referred to above. Of course, we cannot consider such copies as a part of the record before us, but we think it is fairly obvious that if the case is remanded to the district court, the respondent will be able to introduce proof showing that Dean was represented by counsel of his own choosing at the preliminary examination and also at the proceedings in the state district court.

 The cause will be remanded, with instructions to vacate the order and permit the respondent to introduce further evidence on the issue of Dean's representation by counsel at the preliminary examination and in the state district court.

### 5. Frazee's Appeal—No. 8170

Frazee, the applicant for the writ, was arrested at approximately daylight on the morning of November 1, 1962, near Roswell, New Mexico. He was taken to the County Jail of Chaves County in Roswell and there questioned by the Sheriff and a deputy sheriff of Chaves County and admitted his participation in a robbery. He had lost sleep and needed medication for cuts and bruises suffered prior to his arrest. He requested such medication, but it was not afforded him while he was being questioned. He was not otherwise mistreated. He was not advised of his rights and particularly was not advised of his right to counsel.

Shortly after the questioning, Frazee was turned over to the Sheriff of Lincoln County, who transported him to the County Jail at Carrizozo, New Mexico. Thereafter, on November 1, 1962, Frazee was taken before a justice of the peace in Lincoln County for a preliminary examination on a complaint charging him with armed robbery. He was arraigned and undertook to enter a plea of nolo contendere. The justice of the peace treated the plea of nolo contendere as a plea of guilty and the waiver of a preliminary examination and bound Frazee over to the District Court of Lincoln County.

A two-count information was filed against Frazee in the state district court, the first count charging robbery with a deadly weapon, and the second grand larceny.[14]

On November 19, 1962, Frazee was taken before the district court. In response to questions of the court, Frazee stated that he did not have counsel nor means with which to employ counsel. Thereupon, the court appointed H. E. Jones of Carrizozo, New Mexico, a duly licensed and practicing attorney in the courts of the State of New Mexico. At Jones's request, the court continued the arraignment for one week. On November 26, 1962, Frazee again appeared in the district court, accompanied by Jones, who waived the reading of the informa-

14. At the hearing below, Frazee introduced certified copies of the justice of the peace's records at the preliminary examination, the information, the clerk's minutes of the arraignment and plea and the sentence in the district court.

tion and entered pleas of not guilty. At this point, the court asked Frazee if he was satisfied with Jones's representation and Frazee answered, "I am, Your Honor." Frazee further stated in answer to questions of the court that no threats or promises had been made to him. The court then asked Frazee how he pleaded and Frazee answered, "I plead not guilty."

It is apparent that Jones then made an investigation of Frazee's case and of the testimony that probably would be introduced against him on a trial and considered the probability of whether he would be convicted or acquitted. Jones ascertained that Frazee had been convicted of felonies on two previous occasions and gave consideration to the possibility of Frazee being charged as an habitual criminal under § 41–16–2, N.M.Stat.Ann.1953. Jones advised Frazee that the evidence against him was very strong. At a conference between Jones and the district attorney, the latter stated he would be willing to dismiss the second count of the information if Frazee pleaded guilty to the first count.

On December 17, 1962, Frazee again appeared in the state court, accompanied by his counsel, Jones. The court then inquired of Frazee if he was still satisfied with Jones's representation and if he believed his constitutional rights had been protected. Frazee answered in the affirmative to both questions. The court then stated that he understood from Jones that Frazee desired to withdraw his plea of not guilty to the armed robbery charge and enter a plea of guilty thereto. Frazee answered, "Yes, that's correct." The district attorney then moved to dismiss the second count and it was dismissed.

The evidence showed that Frazee had the equivalent of a high school education and a very high I.Q., but that he had engaged in criminal activity since he was fifteen years of age and had spent much time in penal institutions, and that prior to the proceedings on the charge against him in the New Mexico state court, he had been convicted of at least two felonies.

The court sentenced Frazee to an indeterminate term of three to twenty-five years, but suspended the last ten years of the maximum part of the sentence on condition that Frazee, while released on parole, should not violate the laws of New Mexico or the United States. The court also gave Frazee credit on his sentence for the time he had been incarcerated in the county jail. The court further stated that because of the dismissal of the second count, Frazee would not be subject to prosecution as an habitual criminal. That statement was probably inaccurate, because the Habitual Criminal Act of New Mexico provides for a greater sentence on conviction of a second felony and on conviction of a third felony, as well as on conviction of a fourth felony. See §§ 41–16–1, 41–16–2 and 41–16–3, N.M.Stat.Ann.1953.

At the hearing below, Frazee contended that he was not advised of his right to counsel at the preliminary examination, that he did not intelligently waive his right to a preliminary examination and was deprived thereof, and that the record of the proceedings in the state court was correct.

He did not specifically claim that he was not competently and adequately represented by Jones, but stated that the reason he did not tell the court that he was not satisfied with Jones's representation was that Jones had arranged for the acceptance of a plea of guilty to Count One, dismissal of Count Two, and a sentence of three to twenty-five years, and that he believed that was the best "deal" he could get under the circumstances and he was not going to risk upsetting that arrangement by answering the court's questions with respect to representation of Jones, other than in the affirmative. He further testified that because of Jones's advice he did not take the chance of a conviction on both counts.

The confession to the Chaves County officers and the plea of nolo contendere were not used against Frazee in anywise in the district court.

■ We think the record fully supports the finding of the trial court that Jones competently and adequately represented Frazee and protected his rights and that the plea of guilty to the first count was entered by Frazee competently, intelligently, and voluntarily.

Affirmed.

### 6. Garcia's Appeal—No. 8149

A complaint containing three counts was filed against Garcia, the applicant for the writ, before a justice of the peace of Taos County, New Mexico. The first count charged grand larceny, the second, burglary, and the third, assault with a deadly weapon. On May 9, 1962, Garcia was taken before a justice of the peace for a preliminary hearing. He requested the appointment of counsel. Counsel was not furnished him and he entered pleas of not guilty. The justice of the peace found probable cause and bound Garcia over to the state district court.[15]

On May 17, 1962, an information was filed against Garcia in the state district court, containing two counts. The first count charged grand larceny and the second burglary. Garcia and a codefendant charged in the same information appeared in the state district court on May 29, 1962. Garcia requested the appointment of counsel, and on the same day the court appointed Arthur T. Noble, Jr., a duly licensed and practicing member of the bar of New Mexico, to represent Garcia. On June 4, 1962, Garcia, with his appointed counsel, Noble, and his codefendant, with his retained counsel, appeared in the state district court and were arraigned. Each entered pleas of not guilty. The case was set for trial at 11 a. m., June 11, 1962. On that date the case against the codefendant came on for trial and he was convicted. Thereupon, Garcia appeared in person and with his attorney and withdrew his pleas of not guilty and entered pleas of guilty to both counts of the information. The

court imposed a sentence of one to ten years on the first count of the information. No sentence was imposed on the second count.[16]

At the hearing on the application for the writ, Garcia testified that he had been convicted in New Mexico in 1950 of the offense of robbery and sentenced to fifteen years in the penitentiary and that the court suspended all but one year of the sentence; that he entered his pleas of guilty because his attorney, Noble, advised him to do so, and that Noble only conferred with him on one occasion for about ten minutes. He first testified that Noble did not tell him why he should plead guilty, but thereafter testified that one of the reasons Noble advised him to plead guilty was the existence of the suspended sentence. What occurred at the preliminary examination was in nowise used against Garcia in the district court.

The only issue in the case is whether Garcia received competent and adequate representation by Noble. The record shows Noble must have conferred with Garcia on more than one occasion. Noble obviously was able to obtain a dismissal of the second count, which charged the more serious offense of burglary. The representation was competent and adequate.

■ We are of the opinion that the evidence supported the finding of the court that Garcia competently, intelligently, and voluntarily entered a plea of guilty to the first count of the information.

Affirmed.

### 7. McCombs's Appeal—No. 8151

McCombs, the applicant for the writ, was charged with robbery while armed with a dangerous weapon. He was taken before a justice of the peace on September 11, 1962, for a preliminary examination.

15. A certified copy of the records of the proceedings in the state district court against Garcia was introduced in evidence without objection.

16. The minimum sentence for the offense charged in the second count was three to fifteen years.

At the hearing on the application for the writ, McCombs testified that he did not have funds with which to employ an attorney and that he was not represented by an attorney at the preliminary hearing; that he was asked whether he would testify in his own behalf, and that he replied he did not want to do so without counsel being present to represent him, and that the state district attorney told him if he did not take the stand he could not cross-examine the state witnesses. The record of the preliminary examination reflects no discussion with respect to counsel for McCombs, or whether he would take the stand, or whether he would be permitted to cross-examine the state's witnesses. Only one witness was called. He identified McCombs and testified that McCombs, at the point of a gun, compelled him to take the money out of the cash register at Don's Swifty Mart, in Artesia, Eddy County, New Mexico, where the witness was employed, and then compelled him and his brother to lie down on the floor. At the close of the direct testimony, the district attorney stated, "That's all" and McCombs stated, "No questions."

On September 24, 1962, McCombs was taken before the District Court for Eddy County, New Mexico, and arraigned on an information charging him with the offense of armed robbery.[17] At such proceeding in the state district court, the court inquired of McCombs whether he desired counsel and whether he had money or property with which to employ counsel. McCombs answered that he desired counsel, but did not have funds with which to employ one. The court then appointed James F. Warden, a duly licensed and practicing attorney in the courts of New Mexico, to represent McCombs. Thereafter, on October 8, 1962, McCombs again appeared in court, accompanied by Warden as his appointed counsel. Warden stated to the court that McCombs told him the gun with which

the offense was committed was not loaded, but that he had investigated the New Mexico decisions and found that the fact the gun was unloaded was immaterial, and that he had gone over the matter very carefully with McCombs and advised him to enter a plea of guilty.

Warden had access to the testimony introduced by the state at the preliminary examination. It was amply sufficient to support a finding that McCombs was guilty of the offense charged beyond a reasonable doubt.

At the time of his plea of guilty, McCombs admitted that he had theretofore been convicted in Texas for two offenses, and that one of them was an armed robbery charge, for which he was sentenced to the Texas Penitentiary.

The court imposed a sentence of three to twenty-five years in the New Mexico Penitentiary. The penalty for armed robbery was imprisonment in the state penitentiary for not more than twenty-five years nor less than three years. § 40–42–2, N.M.Stat.Ann.1953.

At the hearing below, McCombs admitted that Warden conferred with him on two occasions, once shortly after he was appointed, and later at the county jail. He asserted that his plea was not voluntary, because the district attorney, after the preliminary examination, told him if he went to trial and was convicted, he would get a sentence of fifty years, instead of twenty-five years, under the Habitual Criminal Act. Under the New Mexico habitual criminal statute, McCombs could have been sentenced to a minimum term of twelve and one-half years and a maximum term of fifty years. McCombs admitted that he discussed that fact with Warden before the plea of guilty was entered.

█ We are of the opinion that the evidence fully supported the finding of the trial court that McCombs was competently and adequately represented by counsel and that his plea of guilty was

17. Copies of the transcript of the proceedings against McCombs in the state district court and of the proceedings at the preliminary examination were introduced in evidence by McCombs.

competently, intelligently, and voluntarily entered.

Affirmed.

### 8. Allen's Appeal—No. 8252

Allen, the applicant for the writ, was arrested on January 10, 1962, on charges of extraordinary robbery and robbery while armed. He was interrogated by the police officers at the police station in Hobbs, New Mexico. He made no incriminating statements or admissions, except to admit that a gun shown him by the police belonged to him. He denied that he knew the gun was used in the robbery. He was thereafter taken before a justice of the peace for a preliminary examination.[18] Allen requested, but was not provided with counsel at the preliminary examination.

At the hearing on the application for the writ, Allen testified that he was taken before the District Court for Lea County; that the district judge asked him if he desired an attorney before he pleaded to the information; that he replied in the affirmative; that the court then appointed J. W. Neal, a duly licensed and practicing attorney in the courts of New Mexico, to represent him; that he talked to Neal about five minutes; that Neal told him he did not know much about the case, because he had not had time to check it; that Neal then conferred with the state district attorney, Hanagan; that later Neal came back and advised Allen that Hanagan was going to charge Allen as an habitual criminal and his wife as an accessory, if he did not plead guilty; that he entered the plea of guilty, because Neal advised him it would be better so to do, because of the Habitual Criminal Act, and also because he feared his wife would be charged as an accessory.

The records in the state district court show that two informations were filed against Allen, one numbered 2658 and the other numbered 2676. Another attorney was appointed to represent Allen in No. 2658 and a plea of not guilty was entered on February 6, 1962. On March 6, 1962, Allen was taken before the district court for arraignment in No. 2676. Neal appeared for Allen and stated to the court:

> "I have gone over the counts with him and the penalties he fully understands his rights and the charges and the consequences thereto. I have been advised by Mr. Allen that he wants to enter a plea of guilty to both counts."

Allen confirmed Neal's statement. Neal then stated, "I have nothing to say, except that he does have a previous record." Sentence was then imposed. Allen here seeks discharge from custody under that sentence.

The records of the proceeding in the district court, referred to above, were offered in evidence by Allen at the hearing below. The state introduced no evidence at such hearing.

 We do not think it can be said from the record in the instant case that Allen received competent and effective representation by counsel.

 Reversed and remanded for a further hearing at which the respondent, if he is so advised, may offer evidence with respect to the competency and adequacy of Allen's representation by Neal, and on the issue of whether the plea was voluntary.

### 9. Farris's Appeal—No. 8246

Farris, the applicant for the writ, was arrested on June 23, 1955, on a charge of armed robbery. The record of the justice of the peace court, Precinct No. 1, Eddy County, New Mexico, reflects that Farris was taken before a justice of the peace for a preliminary examination on a complaint charging him with robbery with a dangerous weapon, and was arraigned, advised of his rights and entered a plea of guilty. He was bound over to the state district court.

At the hearing on the application for the writ, Farris denied that the justice

18. A purported transcript of the proceedings at the examination was offered in evidence, but was not admitted, because not properly authenticated.

of the peace advised him of his right to an attorney or his right to remain silent. He admitted that he was advised the charge against him was robbery.

Farris escaped from the county jail at Roswell, New Mexico. He was later apprehended and incarcerated in the penitentiary at Santa Fe, New Mexico. He further testified that he was not allowed to contact an attorney or a friend while he was confined in the penitentiary.

Certified copies of the records in the district court were introduced in evidence by Farris. They included an information numbered 4277, filed June 25, 1955, charging Farris with robbery while armed with a dangerous weapon, the transcript of the arraignment on the information, the report of the justice of the peace of the proceedings at the preliminary examination, and a résumé of the proceedings against Farris in the district court on October 10, 1955.

On the last-mentioned date, T. E. Lusk, a duly licensed and practicing attorney in the courts of New Mexico, was appointed to represent Farris. Lusk advised the court that Farris had been taking some kind of medicine, which he believed had affected his mental condition, and that Farris desired an examination by a doctor. Farris confirmed that statement in answer to the court's questions.

An information numbered 4310, charging Farris with escape and another offense, was also filed.

Pleas of not guilty and not guilty by reason of insanity were entered to both informations. There seems to have been a third charge, but the record does not disclose the nature of the offense.

The report of the medical examination is not reflected in the record.

On October 25, 1955, Farris again appeared in court, accompanied by Lusk. Lusk advised the court that Farris desired to enter a plea of guilty to the robbery charge in No. 4277 and to one count, the escape charge, in No. 4310. In answer to inquiries from the court, Farris stated that he desired to withdraw his pleas of not guilty and enter pleas of guilty. The court then asked Farris whether any promises of leniency or threats had been made to induce him to plead guilty to the robbery and escape charges. Farris answered in the negative. Farris further said in answer to the court's questions that he was entering the pleas of guilty of his own free will. Farris was then asked if he was satisfied with the services of Lusk and he answered, "Very satisfied." The pleas of guilty were then entered and a second count in No. 4310 was dismissed. Sentence was thereafter imposed.

At the hearing on the application for the writ, Farris testified that he consulted with Lusk on only one occasion and for ten or fifteen minutes; that he had not been advised of his rights or provided with counsel at the preliminary examination; that he entered pleas of guilty to the two charges, because Lusk told him if he did not plead guilty, he "would go back to the penitentiary" and be placed in solitary confinement. When asked why, when the state court judge gave him an opportunity so to do, he did not advise the court of what Lusk had told him, Farris replied he did not so advise the court, because he was going to plead guilty and it did not make any difference.

It is our conclusion that the record will not support a finding that the pleas of guilty were competently, understandingly, and voluntarily entered. Reversed and remanded, with instructions to vacate the order and permit the respondent, if he is so advised, to show the results of the medical examination, the extent of Lusk's investigation of the case, the reasons he advised Farris to enter pleas of guilty to the robbery and escape charges, and whether the pleas were voluntary.

### 10. Edwards's Appeal—No. 8182

On February 2, 1960, Edwards was arrested at Cannon Air Force Base, near Portales, New Mexico, on a charge of stealing from the King Electric Company certain tools of a value in excess of $100,

and was incarcerated in the County Jail of Roosevelt County, New Mexico. Shortly before he was taken before a committing magistrate, he was questioned by the Sheriff of Roosevelt County and his deputies. He testified at the hearing on the application for the writ that the officers stated if he confessed he "would get off easy," he "would get off light," he "wouldn't go to prison," and that he finally told the officers what happened and signed a written statement confessing his guilt. The statement is not in the record.

Four days after his arrest, Edwards was taken before a justice of the peace of Roosevelt County for a preliminary examination. He entered a plea of guilty to the larceny charge and was bound over to the district court. He was released on a cash bond furnished by a friend.

At the hearing on the application for the writ, Edwards testified that the justice of the peace did not advise him of his rights at the preliminary examination, or of his right to be represented by counsel at such examination.

On February 12, 1960, an information numbered 2254 was filed in the District Court of Roosevelt County, charging Edwards with grand larceny. On February 13, 1960, he was taken before the district court. The district attorney announced to the court that Edwards was present with his attorney, Fred Boone. Boone entered his appearance for Edwards. The record does not show that Boone was appointed as counsel for Edwards. Boone stated to the court that Edwards had theretofore entered a plea of guilty to another charge in No. 2249, in which he was charged with larceny of property of the Portales High School. Boone entered a plea of guilty for Edwards in No. 2254. In answer to questions from the court, Edwards stated that he had heard the announcement made by his attorney and that he knew himself to be guilty. The plea was entered and thereafter on February 26, 1960, Edwards again appeared with his attorney, Boone, and a sentence of not less than one nor

more than ten years was imposed in No. 2254.

Boone appeared as counsel for Edwards when the latter pleaded guilty to the offense charged in the information numbered 2249. No sentence was imposed on that charge.

Edwards further testified at the hearing below that before each respective plea of guilty was entered, he talked to Boone, but for only a short time, and that it was his impression that when the pleas of guilty were entered, because he had given a confession of his guilt, he would be given a suspended sentence. At the hearing on the application for the writ, the state offered no evidence, except certified copies of the report of the justice of the peace of the preliminary examination, the information in No. 2254, and the proceedings on the arraignment and sentencing in No. 2254.

On the record before us, we do not think it can be said that the pleas of guilty were voluntarily entered.

The cause is remanded, with instructions to vacate the order and permit the respondent to introduce evidence with respect to the questioning of Edwards, what promises, if any, were made to him, whether he was informed of his rights and properly warned, whether Boone was retained or appointed counsel, and whether his plea of guilty in No. 2254 was voluntarily entered.

### 11. Pearce's Appeal—No. 8142

Pearce, the applicant for the writ, was arrested on March 6, 1960, and lodged in the Quay County Jail at Tucumcari, New Mexico. On March 7, 1960, he was taken before a justice of the peace and informed that he was charged with armed robbery. Pearce asked the justice of the peace to appoint counsel for him. The request was denied. Pearce then requested a preliminary hearing and the proceedings were continued.

About 45 minutes later, Pearce was again taken before the justice of the peace and was directed to enter a plea. Pearce attempted to enter a plea of nolo

contendere, but the justice of the peace stated he was not familiar with that plea and that Pearce must plead either guilty or not guilty. Pearce then entered a plea of guilty and was bound over to the district court.

On March 14, 1960, an information was filed against Pearce in the state district court charging him and a codefendant, Brinkley, with armed robbery.[19] On the same date, Pearce and Brinkley were taken before the District Court for Quay County. Pearce stated he desired counsel, but had no funds with which to employ one. The court appointed Emmett C. Hart, a duly licensed and practicing attorney in the courts of New Mexico, as counsel for Pearce.

On March 16, 1960, Pearce and Brinkley were again taken before the district court. At that time Hart appeared as counsel for each of them. They were arraigned and each pleaded not guilty.

On May 11, 1960, Pearce and Brinkley again appeared in court with their counsel, Hart. Hart stated to the court that the defendants desired to withdraw their pleas of not guilty and enter pleas of guilty. The court then stated to each defendant that he had heard the statement of his counsel and asked if each desired to withdraw his plea of not guilty and enter a plea of guilty. Pearce and Brinkley each answered in the affirmative and their pleas of guilty were entered. Sentence was thereafter imposed.

At the hearing on the application for the writ, Pearce testified that he stated to the justice of the peace that he desired a lawyer and a preliminary hearing; that he was not provided with counsel by the justice of the peace; that he endeavored to plead nolo contendere, but the justice of the peace told him that he must plead guilty or not guilty; that he pleaded guilty; that he was not advised such a plea would constitute a waiver of a preliminary hearing; that he explained to Hart after he was appointed as his

counsel what had happened at the two hearings before the justice of the peace; that he first entered a plea of not guilty to the information in the district court; that the case was then set for trial and Hart started to prepare his and Brinkley's defense; that he and Brinkley had two or three more conversations with Hart; that Brinkley decided he did not want to wait for a jury trial and decided to plead guilty; and that "I (Pearce) didn't have much choice, so I went along with him."

Nothing that happened in the two hearings before the justice of the peace was used against Pearce in the state district court. No attack was made in the hearing below upon the competency or adequacy of Hart's representation of Pearce. Pearce based his case solely upon the denial of a preliminary hearing and the denial of counsel by the justice of the peace.

 We are of the opinion that the findings of the trial court below are not clearly erroneous and warranted the conclusion that Pearce waived his right to a valid preliminary examination.

Affirmed.

### 12. Archie's Appeal—No. 8146

Archie, the applicant for the writ, voluntarily surrendered at the Sheriff's Office of Chaves County, New Mexico, May 29, 1960. He told a deputy sheriff he had shot a man whose first name was Norman, but whose last name he did not remember, and turned the gun he used over to the deputy.

Thereafter, a complaint charging Archie with the murder of Norman Clinton Dynes on May 29, 1960, in Chaves County, New Mexico, was filed before a justice of the peace of Chaves County. Archie was taken before the justice of the peace for arraignment and entered a plea of not guilty.

On June 20, 1960, a preliminary examination was held. Archie was without

19. In accordance with a stipulation of the parties, certified copies of the district court records and of the transcripts of the proceedings against Pearce in the district court were introduced in evidence at the hearing below.

funds to employ counsel and was not provided with counsel at such examination. He was advised the justice of the peace could not appoint counsel.

The district attorney advised Archie of the charge against him, of the purpose of the preliminary examination, and his right to question witnesses who appeared on behalf of the state. He warned Archie that he was not obligated to question such witnesses and that if he did so, he should be careful not to ask any questions which would tend to incriminate him. He further advised Archie that he had the right to testify in his own behalf at the preliminary examination, but was not obligated so to do; that if he testified his testimony could be used against him; and that since he did not have an attorney and the charge was murder, Archie would probably be better off if he did not take the stand.

The preliminary examination then proceeded and witnesses for the state testified. Archie did not attempt to cross-examine them and did not testify in his own behalf.

The justice of the peace found probable cause and bound Archie over to the district court.

On June 22, 1960, an information was filed against Archie in the District Court of Chaves County, charging him with murder in the first degree, of Norman Clinton Dynes, on May 29, 1960, in Chaves County.

On July 5, 1960, Archie was taken before the district court. Archie did not have funds with which to employ counsel and the court appointed William W. Osborn, a duly licensed and practicing attorney in the courts of the State of New Mexico, to represent him. Osborn accepted the appointment, waived the reading of the information, and entered a plea of not guilty for Archie. A recess was then taken. Thereafter, on the same day, on the reconvening of court, Osborn stated that with the court's permission he would like to withdraw as court-appointed counsel for Archie and enter his appearance for Archie as his "private practicing attorney."

On December 5, 1960, Archie again appeared before the district court accompanied by his attorney, Osborn. Osborn advised the court he had talked to the witnesses in the case and studied the record of the preliminary examination, a copy of which had been furnished him; had discussed the matter with Archie; had advised Archie of his right to trial by jury; and if on a jury trial, the jury should find him guilty of first degree murder and not recommend clemency, it would be mandatory for the court to sentence him to death, but if the jury should find him guilty of first degree murder and recommend clemency, he would be sentenced to life imprisonment; and if the jury should find him guilty of manslaughter, he would be sentenced to imprisonment for a term of one to ten years; and if the jury should find the homicide was justifiable he would go free; and if Archie pleaded guilty to second degree murder, the court would have to sentence him to imprisonment for ninety-nine years; that Archie's rights had been fully explained to him and he believed Archie understood them; and that Archie wished to withdraw his plea of not guilty to first degree murder and enter his plea of guilty to second degree murder.

The court then asked Osborn if he had advised Archie he might be found not guilty of any offense and Osborn replied he had so advised him. The court then asked Archie if he had heard the statements of his attorney and agreed therewith, and if he desired to change his plea of not guilty to first degree murder to that of guilty to second degree murder. To each question, Archie answered, "Yes." The plea of guilty to second degree murder was then entered and the charge of first degree murder dismissed. Archie was sentenced to imprisonment for a period of not less than three years nor more than ninety-nine years and was eligible for parole after serving three years.

At the hearing below, Archie testified that it was his contention that he had a defense to the charge of murder, which could have been raised at the preliminary examination. The record of the preliminary examination belies that statement.[20]

Archie further testified that he thought Dynes had a gun in his hand, that he actually saw the gun and thought he was defending himself when he shot Dynes; that if he had been represented by counsel at the preliminary examination, it could have been shown on cross-examination that Dynes had a gun and he would not have been bound over; and that since Osborn had told him he would probably get the electric chair, he concluded he should plead guilty to second degree murder.

While the preliminary examination was vitiated by reason of the fact that Archie was not furnished with counsel at such examination, we are of the opinion that no prejudice resulted therefrom in the proceeding in the state district court. Archie had an attorney of his own choosing, who had examined the record of the preliminary examination and had talked to the state's witnesses. After consultation with Archie, Osborn concluded it would be better for Archie to plead guilty to second degree murder. Obviously, Osborn was able to make an arrangement with the district attorney for the entry of such plea and the dismissal of the first degree murder charge.

It is apparent that Osborn, after examining the preliminary examination record, talking to the state's witnesses and consulting with Archie, did not think self defense could be established.

We conclude that Archie's plea of guilty to second degree murder was intelligently, competently, and willingly entered and he thereby waived his right to a valid preliminary examination.

Affirmed.

### 13. Lovett's Appeal—No. 8186

Lovett, the applicant for the writ, was arrested in Albuqerque, New Mexico, on October 5, 1961, on charges of rape. Subsequent to his arrest he made written, incriminating statements to the police, but those statements are not in the record.

A complaint was filed before a justice of the peace of Bernalillo County against Lovett, charging him with one count of statutory rape and two counts of forcible rape. Lovett was taken before the justice of the peace, was duly advised of the purpose of a preliminary examination, and the charges were read to him. The court then asked him if he was represented by counsel and Lovett stated that he had arranged for an attorney, Ben Traub, to represent him, and Traub had promised to be present at the preliminary examination. The court directed an officer to call Traub. The officer reported that Traub would not appear for Lovett at the preliminary examination. The court then stated since Lovett did not have an attorney he would undertake to protect Lovett's rights, advised Lovett he had the right to cross-examine witnesses but should ask only direct questions, and warned him that if he testified a record would be made and any testimony he gave could be used against him in the event he was bound over and later tried in the district court. Pleas of not guilty were then entered and the preliminary examination proceeded.[21]

The evidence presented by the state at the preliminary examination, wholly apart from Lovett's statements to the officers, established beyond a reasonable doubt that Lovett was guilty of the offense of statutory rape charged in Count

20. Certified copies of the transcript of the preliminary examination, the court records, and the transcripts of the proceedings against Archie in the state district court were introduced in evidence at the hearing below by Archie.

21. Certified copies of the transcript of the preliminary examination, of the criminal proceedings against Lovett in the state district court, and of the court records of such proceedings were introduced in evidence at the hearing below by Lovett.

One of the complaint and the offense of forcible rape charged in Count Three of the complaint. The victim of the offense charged in Count One was an 11-year-old girl and the victim of the offense charged in Count Three was a 61-year-old woman. The alleged victim of the offense charged in Count Two of the complaint testified Lovett did not have intercourse with her and on the motion of the district attorney that count was dismissed. The written statements made by Lovett to the police were introduced in evidence. Probable cause was found and Lovett was bound over to the district court.

On February 6, 1962, an information was filed in the District Court for Bernalillo County charging Lovett in two counts, the first with statutory rape of a female under 16 years of age and the second with forcible rape of a female over the age of 16 years. On March 21, 1962, Lovett appeared in the district court in his own proper person and entered pleas of not guilty. At that time he apparently was not represented by counsel. On April 9, 1962, he again appeared before the district court accompanied by his counsel, John J. Duhigg, a duly licensed and practicing attorney in the courts of New Mexico, and withdrew his pleas of not guilty and entered pleas of guilty to the two counts of the information. Whether Duhigg was employed or appointed counsel does not appear from the state court records. On May 23, 1962, Lovett again appeared in the district court accompanied by his counsel, Duhigg, and was sentenced to a term of imprisonment of not less than one year nor more than ninety-nine years on each of Counts One and Two, the sentences to run concurrently.

Lovett testified at the hearing on the application for the writ that he asked the justice of the peace to appoint counsel for him and was refused; that before his arraignment he gave statements to the police; that he did not have an attorney when those statements were made; that he knew he should have an attorney and a jailer called Ben Traub for him, but that Traub did not appear at the preliminary examination; that Duhigg was appointed by the district court to represent him; that he saw Duhigg on two occasions before he was sentenced; that Duhigg advised him the district attorney had agreed to dismiss one charge and that he might get probation on the other; that he then agreed to plead guilty; that he was given a psychiatric examination; and that he expected a two to ten year sentence, but received one to ninety-nine years.

■ The transcript of the proceedings before the justice of the peace makes it clear that it was reasonably certain Lovett would have been convicted on both counts of the information had he gone to trial. The penalty for each of the offenses for which Lovett was convicted is fixed by § 40–39–1, N.M.Stat.Ann.1953 at imprisonment for not less than one nor more than ninety-nine years. He received a concurrent sentence. He was effectively and wisely represented by his counsel.

■ However, Lovett's testimony that Duhigg advised him the district attorney had agreed to dismiss one charge and that Lovett might get probation on the other charge raises a question as to the voluntariness of the plea of guilty.

Accordingly, the cause is remanded, with instructions to vacate the order and permit the respondent, if he is so advised, to introduce evidence as to whether any agreement had been made by the district attorney, as to whether Duhigg told Lovett such an agreement had been made, and as to whether there were any circumstances that could possibly justify probation.

If the court finds the district attorney made no such agreement, then we think the court might be warranted in concluding, even if Duhigg's testimony should be unavailable, that Duhigg, a reputable lawyer, did not make a false statement to Lovett and did not tell Lovett he might get probation.

*14. Villanueva's Appeal—No. 8213*

Villanueva, the applicant for the writ, was arrested on October 3, 1960, and

charged by complaint filed October 5, 1960, in a justice of the peace court for Santa Fe, New Mexico, with the offenses of assault with intent to murder, assault with intent to kill, and assault with a deadly weapon. He was taken before the justice of the peace for a preliminary examination, at which time he was not represented by counsel nor advised of his right to counsel. He pleaded not guilty. Villanueva had not at any time made any statements to the authorities relating to the charges against him and did not testify at the preliminary examination. At the conclusion of the preliminary examination, the justice of the peace found probable cause and Villanueva was bound over to the district court.

On October 6, 1960, an information containing three counts was filed against Villanueva in the District Court for Santa Fe County.[22] The first count charged assault with intent to murder, the second, assault with intent to kill, and the third, assault with a deadly weapon. Shortly thereafter, he was arraigned on the information. He was not represented by counsel and the court entered pleas of not guilty in his behalf.

In November, 1960, Villanueva's parents retained Bertrand B. Prince to represent him. Prince arranged a bond for Villanueva and secured his release.

On March 21, 1961, Villanueva, accompanied by his counsel, Prince, appeared in the district court. A plea of guilty was entered to Count Two of the information, charging assault with intent to kill. The court asked Villanueva if he understood he was entering a plea of guilty to the charge of assault with intent to kill and if he knew what he was doing and Villanueva answered, "Yes." The court then asked him if any promises of leniency had been made by any law enforcement officer, his own attorney, or any other person to induce him to enter a plea of guilty and Villanueva answered in the negative. The plea was received and the other two counts dismissed.

On March 28, 1961, Villanueva, accompanied by his counsel, Prince, appeared in district court for sentencing. Prior to his arrest on the assault charges, Villanueva had been confined in the state reform school and after release therefrom had broken the conditions of his release. Subsequent to his arrest on such assault charges and while out on bond, he had been arrested on another charge. The judge of the state court stated, for those reasons, he could not suspend Villanueva's sentence and sentenced him to confinement for a period of not less than one nor more than twenty-five years.

Prince was a former state district attorney and an experienced criminal lawyer. He had access to the transcript of the evidence introduced at the preliminary examination. He undoubtedly concluded it would be best for Villanueva to plead guilty to Count Two, which charged a lesser offense than Count One. We think Prince served Villanueva well in arranging to have his plea to such lesser offense accepted and securing the dismissal of the other two counts.

We are of the opinion that the plea of guilty was entered intelligently and voluntarily, upon the advice of Villanueva's retained counsel, and that Villanueva waived his right to a valid preliminary examination.

Affirmed.

### 15. *Patterson's Appeal—No. 8239*

Early in September, 1956, Patterson, the applicant for the writ, was arrested and confined in the County Jail of Eddy County, New Mexico, on a charge of grand larceny. On September 10, 1956, a complaint was filed before a justice of the peace of Eddy County, charging Patterson with grand larceny. On the

22. Certified copies of the court records and of the transcripts of the proceedings against Villanueva in the state district court were introduced in evidence at the hearing below by Villanueva.

same day, he was taken before the justice of the peace for a preliminary examination. According to the record of the justice of the peace, Patterson was advised of his rights.[23] He entered a plea of not guilty. After a hearing, he was bound over.

In the hearing on the application for the writ, Patterson testified that he was not advised of his rights by the justice of the peace and did not have an attorney at the preliminary examination.

On September 17, 1956, an information was filed in the District Court for Eddy County, charging Patterson with grand larceny. Patterson was taken before the district court for arraignment and because he was not represented by counsel the court entered a plea of not guilty for him. Thereafter, the court appointed M. Rosenberg, a duly licensed and practicing attorney in the courts of the State of New Mexico, to represent Patterson. Rosenberg was furnished by the district attorney with a copy of a transcript of the testimony and proceedings at the preliminary examination.

Thereafter, on October 15, 1956, Patterson appeared in the district court with his counsel, Rosenberg. Rosenberg stated to the court that he had made a personal investigation and an examination of the records in the case and had discussed the matter with Patterson and that Patterson desired to enter a plea of guilty. The court asked Patterson if he had any questions and Patterson replied in the negative. The court then asked if he had been advised by his attorney of the possible consequences of a plea of guilty and if he desired to plead guilty. Both questions were answered by Patterson in the affirmative. The plea of guilty was received.

On November 27, 1956, Patterson appeared in the district court with his counsel, Rosenberg, for sentencing. Be-fore sentence was imposed, Rosenberg stated to the court that the items stolen by Patterson were band instruments; that it would have been impossible for Patterson to dispose of them; that all the instruments were recovered; that Patterson was intoxicated at the time; that because of a prior conviction a suspended sentence was not possible; and that what Patterson needed was psychiatric treatment for alcoholism. The court sentenced Patterson to imprisonment for a term of one to ten years and made the commitment effective October 9, 1956.

At the hearing on the application for the writ, Patterson testified that at the time of the alleged offense he was intoxicated and had no recollection of what happened; that the only thing he remembered was waking up in the county jail; and that one of the witnesses at the preliminary examination testified that he had seen Patterson commit the offense. He further testified that Rosenberg indicated he had examined a transcript of the preliminary proceedings and told him he was obviously guilty; that they had witnesses who knew what happened; that he advised him to plead guilty; and explained that he would receive a sentence of from one to ten years and be given credit for the time he had served in jail.

■■ We are of the opinion the record fully established that Patterson competently, intelligently, and voluntarily entered a plea of guilty, that his representation in the district court was entirely effective, that nothing which occurred in the justice of the peace court was in any way used against him, and that he waived his right to a valid preliminary examination.

Affirmed.

### 16. Ortega's Appeal—No. 8240

Ortega was arrested shortly after midnight on November 19, 1957, in Santa

---

23. Certified copies of the court records and of the transcript of the proceedings against Patterson in the state district court were introduced in evidence at the hearing below by Patterson. A transcript was made of the proceedings before the justice of the peace, but such transcript is not in the record.

Fe, New Mexico. By a four-count complaint filed in a justice of the peace court of Santa Fe County, New Mexico, he was charged in each of two counts with armed robbery and in each of the other two counts with assault with a deadly weapon.

On the day of his arrest Ortega was arraigned on the complaint before the justice of the peace and pleaded not guilty.

At the hearing below on the application for the writ, Ortega testified that after his arrest and before such arraignment, the police took his clothes, gave him coveralls to wear, and interrogated him "all night long."

At the time of such interrogation and arraignment, Ortega requested, but was denied counsel.

Thereafter, Bertrand B. Prince, a former district attorney, and an able and experienced lawyer in the field of criminal law, was retained by the father of Ortega to represent him.

On February 3, 1958, Ortega was taken before the justice of the peace for a preliminary examination. Prince appeared as counsel for Ortega and represented him throughout the proceeding. Witnesses for the state and for the defendant appeared and testified. The state's witnesses were thoroughly cross-examined by Prince. Ortega did not testify. The jacket and trousers Ortega was wearing when arrested were introduced in evidence, but no statements or admissions of Ortega were introduced in evidence. Ortega was bound over.

An information was filed in the state district court charging Ortega in each of two counts with armed robbery and in each of two other counts with assault with a deadly weapon. Prince entered his appearance for Ortega in the state district court. Thereafter, Ortega was taken before the district court for arraignment on the information. Prince appeared as his counsel. Ortega pleaded guilty to one count of armed robbery and one count of assault with a deadly weapon. The other two counts were dismissed. He was sentenced to imprisonment for three to twenty-five years on the robbery count and three years on the assault with a deadly weapon count, to run concurrently.

■■■■■ No statements or admissions, if any were made by Ortega to the officers, were used against him, either at the preliminary examination or in the state district court. He was in nowise prejudiced by the plea of not guilty entered at the first arraignment. He intelligently, competently, and voluntarily pleaded guilty in the state district court and thereby waived his right to claim any defect in the preliminary examination.

The findings and conclusions of the trial court were supported on the record and were correct.

Affirmed.

### 17. Charlton's Appeal—No. 8247

Charlton, the applicant for the writ, was arrested in San Juan County, New Mexico, on July 31, 1956. On August 1, 1956, a complaint charging him with first degree murder was filed with a justice of the peace for San Juan County. The record of that court [24] shows that Charlton waived a preliminary examination and was bound over to the District Court for San Juan County.

On August 13, 1956, an information was filed in such court, charging Charlton with the first degree murder of his wife, Zola Charlton. On September 12, 1956, Roberto L. Armijo, a duly licensed and practicing attorney in the courts of New Mexico, entered his appearance for Charlton.

---

24. The records of the justice of the peace court, consisting of the complaint, the warrant issued thereon, the final order on the complaint and the report of the justice, and the records and transcript of the proceedings against Charlton in the state district court were introduced in evidence at the hearing below by Charlton.

On October 22, 1956, Charlton appeared in district court accompanied by his attorney, Armijo. Armijo waived the reading of the information and announced that Charlton would enter a plea of guilty to second degree murder and the district attorney stated that such a plea was acceptable to the state if the court approved it. The court asked Armijo if Charlton had been fully advised of his rights and if he realized he might be sentenced to the penitentiary. Armijo answered in the affirmative and stated Charlton was pleading guilty voluntarily. The court then asked if Charlton had received inducements of any kind and Armijo answered in the negative. The court then accepted the plea and sentenced Charlton to imprisonment for three years to life, the minimum sentence at that time for second degree murder.[25] Under the New Mexico parole statutes, Charlton was eligible for parole after he had served three years.[26]

At the hearing on the application for the writ, Charlton testified that when he was arrested the sheriff questioned him; that he was not certain whether he signed either a statement or a confession; that he had been drinking at the time of the commission of the alleged offense; that when he was taken before the justice of the peace he was not advised as to his legal rights nor of his right to counsel; that the justice of the peace asked him if he wanted to waive a preliminary examination and he stated he wished to waive an examination, but that he did not then know what "waiver" meant and had not been advised of the effect of such a waiver.

He further testified that after he returned to jail he communicated with Armijo; that Armijo came to see him; that after talking with him he was advised by Armijo that he was charged with first degree murder, and that he thought the best thing for Charlton to do was to plead guilty to second degree murder; that he did not tell Armijo he had signed a confession, and did not even know whether he had signed a confession; and that Armijo advised him the penalty for first degree murder could be the death penalty, unless the jury specified life imprisonment in its verdict.

 We are of the opinion that the record fully supports the findings of the trial court that Charlton's plea of guilty to second degree murder was made voluntarily, competently, and intelligently and that nothing that occurred at the proceedings before the justice of the peace was used against Charlton. If Charlton made a confession, it was not subsequently used against him. By his plea of guilty, Charlton waived his right to a valid preliminary examination.

Affirmed.

### 18. Gaona's Appeal—No. 8261

On May 8, 1963, a complaint was filed in the Justice of the Peace Court for McKinley County, New Mexico, charging Gaona, the applicant for the writ, with grand larceny and breaking and entering in the nighttime. A warrant was not issued, because Gaona was in the custody of the police on a "drunk charge." The records of the justice of the peace court show that Gaona was arraigned before the justice of the peace on May 8, 1963; that he was without counsel; that he was advised of his rights; and that he pleaded guilty and waived a preliminary examination. He was bound over to the district court.

On June 5, 1963, an information was filed in the District Court of McKinley County against Gaona containing two counts, the first charging him with grand larceny and the second with breaking and entering in the nighttime.[27] On

---

25. N.M.Stat.Ann.1941, § 41–2410.

26. N.M.Stat.Ann.1941, § 42–1706.

27. Certified copies of the district court records in the criminal case against Gaona and of a transcript of the proceedings therein were introduced in evidence at the hearing below by the respondent without objection.

May 24, 1963, the district court appointed the firm of Denny and Glascock, duly licensed and practicing attorneys in the courts of New Mexico, to represent Gaona.

On June 11, 1963, Gaona appeared in the district court accompanied by a member of such firm. His counsel announced that Gaona wished to plead guilty to the first count of the information, charging grand larceny, and the district attorney moved to dismiss the second count, charging breaking and entering in the nighttime. The court then asked if Gaona understood that the penalty for grand larceny was imprisonment in the penitentiary for not less than one year nor more than ten years and that, if he had been convicted of a prior felony, the court had no discretion with respect to the imposition of that sentence. Gaona answered that he so understood. The plea of guilty to Count One was then received and Count Two was dismissed.

Gaona's counsel then stated to the court that at the time Gaona was picked up by the police they knew nothing about the larceny or burglary charged in the information; that Gaona told the police about those offenses voluntarily, at the urging of his wife; that alcohol had been his problem; and that he had a prior conviction.

Gaona then stated to the court that the police were not aware that he had committed the offenses with which he was charged; that he told them about such offenses voluntarily, on the advice of his wife; that he was pleading guilty so that he could start over after his release; that he now had a trade which he had not had before; and that he could "make it" now. Gaona was sentenced to imprisonment for not less than one year nor more than ten years.

At the hearing on the application for the writ, Gaona testified first that while he was being held by the police on the "drunk charge" he was interrogated; that he requested an attorney, but was not allowed to consult one; that he made a statement admitting he had committed a larceny; and that the statement was reduced to writing and he signed it because "I figured that I didn't have the funds to get a lawyer."

He subsequently testified, however, that he did not remember whether the police told him he had the right to an attorney, that anything he said could be used against him, and that he did not have to tell them anything or sign anything. He further testified that he discussed his statement with his appointed counsel, who advised him that because he had given it there was nothing much that he could do but plead guilty, and for that reason he entered the plea of guilty.

We are of the opinion that the court below was warranted in finding that at the instigation of his wife Gaona voluntarily surrendered to the police and confessed that he had committed the larceny. We are further of the opinion that Gaona was well represented in the state district court and that his statement to the police, while not used against him, probably could have been so used, since he voluntarily went to the police and confessed his guilt.

Gaona's plea of guilty to the first count of the information was competently, intelligently, and voluntarily made and was a waiver of his right to a valid preliminary examination.

Affirmed.

### 19. Gilstrap's Appeal—No. 8267

On about July 13, 1959, Gilstrap, the applicant for the writ, and another person named Charles A. French, were arrested in El Paso, Texas, as suspects in two murders which had occurred in Luna County, New Mexico. Gilstrap was interrogated by Texas officials and approximately 24 hours after his arrest he confessed participating in the murders. Three or four days after his arrest in Texas, Gilstrap waived extradition and was returned to New Mexico, where he made a second confession to New Mexico officials. He was not represented by counsel at the time of either confession.

On July 16, 1959, Gilstrap and French were taken before a justice of the peace for Luna County, New Mexico, for a preliminary examination on a complaint charging them with the murder of Audney Hollis and Eddie Anderson. Gilstrap was not represented by counsel. He was advised that he could employ an attorney to represent him; that the justice of the peace had no authority to appoint one for him; and that the district judge would appoint counsel for him if he was charged by information in the district court. The complaint was then read and Gilstrap pleaded guilty. He was asked if he desired to waive a preliminary examination and he replied, "I don't know, all I know is that I'm guilty and I'm going to take what they will give me." French pleaded not guilty, but waived a preliminary examination. The district attorney elected to put on evidence and a date was set for a hearing.

On July 20, 1959, Gilstrap and French were taken before another justice of the peace. They were advised of their right to be represented at the preliminary examination by counsel employed by them, but that the justice of the peace had no authority to appoint counsel for them. French stated he did not think he needed counsel at the preliminary examination. The justice of the peace asked Gilstrap if he desired counsel at the preliminary examination and Gilstrap answered, "No." The justice of the peace then said, "You waive all rights of counsel for the hearing?" and Gilstrap said, "Yes."

Witnesses were then called in behalf of the state. Bonner, an eye witness, testified that he saw Gilstrap, French, and a man called "Tex" beat Hollis and Anderson over their heads with clubs and rob them of money. Bonner's wife also saw the beating and would have corroborated her husband's testimony, had she been called as a witness. Other evidence showed that the beating took place in a train of the Southern Pacific Railroad, after it left Lordsburg and in Luna County; and that officers found, near the railroad right of way, Hollis's discharge papers, a bank book in the name of Hollis, a Texas Unemployment Card of Hollis's, Hollis's Social Security Card, and some clothing. The beating caused the deaths of Hollis and Anderson.

Section 40–24–4, N.M.Stat.Ann.1953, defines first degree murder and provides that a murder committed in the perpetration of or attempt to perpetrate any felony constitutes first degree murder. State v. Smelcer, 30 N.M. 122, 228 P. 183, holds that a killing by a person engaged in the commission of a felony is murder in the first degree. The evidence referred to above, presented at the preliminary examination, was clearly sufficient to establish the offense of murder in the first degree beyond a reasonable doubt.

At the conclusion of the state's evidence, Gilstrap, after being duly warned, insisted on testifying and related in detail how he and his codefendants beat and robbed Hollis and Anderson.

On September 15, 1959, an information containing two counts was filed against Gilstrap, French, and Joseph Alvin Miller, the man referred to by Bonner as "Tex." The first count charged them with the first degree murder of Hollis and the second count charged them with the first degree murder of Anderson.[28] Thereafter, the district court appointed Bert Newland and John Schaber, duly licensed and practicing attorneys in the courts of New Mexico, to represent Gilstrap.

On October 19, 1959, two other informations were filed in the district court against Gilstrap. One charged him with the second degree murder of Anderson and the other charged him with the second degree murder of Hollis. On that

28. A certified copy of the transcript of the preliminary examination and certified copies of the district court records in the criminal case against Gilstrap and of the transcripts of the proceedings therein were introduced in evidence at the hearing below by Gilstrap.

same date, Gilstrap, accompanied by his two appointed attorneys, appeared in district court for arraignment on such informations. Gilstrap was duly informed of the charges and advised if he pleaded guilty to second degree murder the penalty would be not less than three years and not more than life. Gilstrap stated that he understood the charges and the penalties. He was further told that he had the right to a trial by jury. Gilstrap stated he did not want a jury trial and waived it, that no promises or threats had been made to induce him to plead guilty, and that he was guilty. He further stated that he participated in the killings of Anderson and Hollis without justification. His pleas of guilty were entered and he was sentenced to imprisonment in the penitentiary for a term of not less than three years nor more than his natural life on each information, the sentences to run consecutively.

At the hearing on the application for the writ, Gilstrap testified that he knew he did not have to testify at the preliminary examination, and that if he took the stand his testimony could be used against him, and that he still went ahead and testified, and because of those facts and other evidence against him, his attorneys advised him that if he went to trial to a jury, he would probably be convicted and receive a life sentence on one charge and the death penalty on the other.

 None of the events that occurred prior to the proceedings in the state district court were in anywise used against Gilstrap. It is our opinion that the evidence fully warranted the trial court in finding that Gilstrap was effectively represented in the state district court, that he intelligently, competently, and voluntarily entered his pleas of guilty to the second degree murder charges and that he waived his right to a valid preliminary hearing.

Affirmed.